## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
                                              :
In re:                                        :        Chapter 11
                                              :
CAL DIVE INTERNATIONAL, INC., *et al.*,[1]    :        Case No. 15-10458 (   )
                                              :
                                 Debtors.     :
                                              :        Joint Administration Requested
                                              :
-------------------------------------------------------------x

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND  FINAL ORDERS AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS AND GRANTING RELATED RELIEF

Cal Dive International, Inc. ("**Cal Dive**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") respectfully request entry of interim and final orders, under §§ 105(a), 363(b), 364, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), (i) authorizing, but not directing, the Debtors to pay, prepetition obligations of certain vendors, suppliers, service providers, and similar entities that provide goods or services critical to the ongoing operation of the Debtors' businesses (the "**Critical Vendors**," whose claims are the "**Critical Vendor Claims**") in the ordinary course in an amount not to exceed $2,600,000 on an interim basis and $8,700,000 on a final basis (for both interim and final periods, the "**Critical Vendor Claims Cap**"), and (ii) granting related relief.  In support of this Motion, the Debtors rely on and incorporate by reference *Quinn Hébert's Declaration in Support of the Debtors' Chapter 11 Petition and First Day Pleadings* (the "**First**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Cal Dive International, Inc. (0501), Cal Dive Offshore Contractors, Inc. (4878), Affiliated Marine Contractors, Inc. (8678), Fleet Pipeline Services, Inc. (2104), Gulf Offshore Construction, Inc. (2106), and CDI Renewables, LLC (4985).  The Debtors' corporate headquarters is at 2500 CityWest Boulevard Suite 2200, Houston, TX 77042.

**Day Declaration**"), filed concurrently with this Motion.[2]  In further support of the Motion, the

Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION & VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157

and 1334, and venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding

under 28 U.S.C. § 157(b).[3]

## BACKGROUND

2.      On March 3, 2015 (the "**Petition Date**"), each of the Debtors filed a

voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The

Debtors continue to manage and operate their businesses as debtors in possession under

Bankruptcy Code sections 1107 and 1108.

3.      The Debtors and their non-debtor foreign affiliates (collectively, the "**Cal

Dive Group**") constitute a marine contractor that provides highly specialized manned diving,

pipelay and pipe burial, platform installation and salvage, and well-intervention services to a

diverse customer base in the offshore oil and gas industry.  Headquartered in Houston, the Cal

Dive Group operates in the Gulf of Mexico Outer Continental Shelf, the United States, Latin

America, Southeast Asia, China, Australia, West Africa, the Middle East, and Europe.

4.      Only the Cal Dive Group's U.S.-based entities are Debtors in these cases.

The foreign members of the Cal Dive Group, including operating companies in Mexico,

---

[2] Capitalized terms not otherwise defined in this Motion have the meanings used in the First Day Declaration.

[3] Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

Australia, the United Kingdom, Indonesia, Malaysia, and Singapore, have not filed chapter 11 petitions and continue to conduct their businesses in the ordinary course.

5.     Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases and the Debtors' goals for these cases, is set forth in the First Day Declaration.

## RELIEF REQUESTED

6.     By this Motion, under Bankruptcy Code sections 105(a) and 363, the Debtors seek entry of an interim and final order—as proposed in Exhibit A (the "**Interim Order**") and Exhibit B (the **"Final Order"**), respectively—authorizing, but not directing, the Debtors, to pay Critical Vendor Claims in the ordinary course of business, in an aggregate amount not to exceed the applicable Critical Vendor Claims Cap.  The Debtors will use reasonable efforts where appropriate and practicable to condition payments to Critical Vendors on each Critical Vendor's agreement to (i) accept such payment in satisfaction of all or a part of its Critical Vendor Claim; (ii) continue to provide supplies or services to the Debtors during these chapter 11 cases consistent with those practices and programs (including credit limits, pricing, timing of payments, and availability) in place in the 12 months before the Petition Date ("**Customary Trade Terms**"); and (iii) waive lien rights it may hold in respect of prepetition obligations against a Debtor-owned vessel or property of the Debtors' customers.

7.     The Debtors also request that this Court authorize all applicable banks and other financial institutions to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date for Critical Vendor Claims (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and authorize the banks and financial institutions to rely on the Debtors' representations as to

which checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Motion, *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such payments.

### BASIS FOR RELIEF REQUESTED

## I. FACTS SPECIFIC TO RELIEF REQUESTED

8.     In an exercise of business judgment, the Debtors have determined that continuing to receive specialized goods and services from the Critical Vendors is necessary to operate and restructure the diving business as a going concern and complete midstream construction business projects, maximizing value for all creditors.  If granted discretion to satisfy Critical Vendor Claims, as requested in this Motion, the Debtors will assess, case by case and in real time, the benefits to the estates of paying Critical Vendor Claims and pay such claims only to the extent their estates will benefit.  Without this relief, the Debtors believe that the Critical Vendors may cease providing goods and services to the Debtors or otherwise take action to impede the Debtors' restructuring—a dire result for the Debtors and their stakeholders.

## A.     Critical Vendor Claims

9.     The Debtors operate in a highly specialized industry that requires them to maintain and develop relationships with certain vendors to supply goods and services on which both the diving business and construction business depend.  Without these goods and services, the diving business would suffer severe disruption, jeopardizing the Debtors' ability to continue operating, and the construction business would halt immediately, preventing the Debtors from completing projects for which they stand to be paid millions of dollars.  To prevent any unexpected or inopportune interruption to the Debtors' businesses during these chapter 11 cases, it is essential that the Debtors maintain their relationship with, and honor their outstanding payment obligations to, the Critical Vendors.

10.     To identity the Critical Vendors, the Debtors thoroughly analyzed their suppliers and service providers, along with the needs of their businesses during these cases. Specifically, the Debtors' management, with the assistance of advisors, spent substantial time and effort studying accounts payable and vendor lists for those vendors most essential to operating the diving business and completing in-progress construction business projects.  In examining their vendor relationships, the Debtors considered whether:

- the vendor is a sole-source or limited-source supplier or service provider;
- the vendor has the ability to exercise remedies against property belonging to the Debtors' customers;
- the vendor has a maritime or other statutory lien against property of the Debtors for unpaid obligations;
- the vendor provides services that are so vital to, or so commingled with, the Debtors' businesses that even brief disruption would harm the Debtors' operations;
- the Debtors would be able to cost-effectively obtain comparable products or services from alternative sources within a reasonable timeframe;
- the vendor is able or likely to refuse providing essential supplies or services to the Debtors if prepetition balances are not paid; and
- the business relationship between the Debtors and the vendor is governed by a long-term contract.

11.     Based on these criteria, the Debtors identified a limited roster of Critical Vendors whose services generally fall into one or more of the following categories: (i) specialized labor providers; (ii) crew providers; (iii) vessel providers; and (iv) supplies and necessaries providers.

12.     *Specialized Labor Providers.*  A number of Critical Vendors supply the Debtors with labor services, from underwater welding to surface diving, essential to completing the Debtors' diving and construction projects (the "**Labor Providers**").  In light of the scale and nature of the Debtors' diving and construction projects, a particular Labor Provider is often the only supplier, or one of a very few, with the special skills to perform required tasks.

RLF1 11599045v.1

13.    Some Labor Providers owed for prepetition work might not only withhold future services to the Debtors, but also assert statutory liens under applicable state law against property they have serviced.[4]    That property often belongs to the Debtors' customers.    Labor Providers placing liens on customer-owned property could delay payments from customers to the Debtors and jeopardize relationships the Debtors must preserve to continue operating and collect amounts due from such customers.    The Debtors, having just entered chapter 11, cannot bear customers withholding payment or afford to risk tarnishing relationships with key customers. Payment of the Labor Providers thus is integral to the Debtors' efforts in these cases.

14.    *Crew Providers*.    To complement their workforce, the Debtors also retain maritime service companies that provide crews to operate and support the Debtors' fleet of vessels.    The service companies the Debtors retain are industry leaders in vessel support services and employ individuals with highly specialized skills who constitute a majority of the crews on certain of the Debtors' more specialized vessels.    By using them, the Debtors are able to maintain headcount flexibility, reducing overhead costs associated with, among other things, the Employee Benefit Obligations.    This enables the Debtors to manage costs and more efficiently respond to fluctuations in workload and vessel activity.    In addition, the Debtors believe that replacing these maritime service companies, and the personnel they provide, would impair the Debtors' ability to deploy their vessels, damaging the Debtors' businesses and the estates.

15.    *Vessel Providers*.    The Debtors do business with suppliers of specialized vessels, such as tugboats, cargo barges, utility boats, dive support vessels, and remotely operated vehicles (the "**Vessel Providers**").    These chartered vessels perform functions required for

---

[4] *See e.g.*, Louisiana Oil Well Lien Act ("**LOWLA**"), La. R.S. 9:4861, *et seq.*    Under LOWLA, a subcontractor may assert a lien over property of an operator or lessee in order to secure the "price of his contract for operations."    La. R.S. 9:4862(A)(1).    By providing subcontractors with this authority, the statute aims to "protect [subcontractors] from the default of those who engage them." *Guichard Drilling Co. v. Alpine Energy Servs., Inc.*, 657 So.2d 1307, 1312 (La. 1995).

projects that the Debtors' vessels generally cannot.  To complete certain upcoming projects, for example, the Debtors must charter specialized vessels that support specific cranes designed to lift and place platforms, structures, or other equipment into position for offshore installation.

16.    The Vessel Providers are often the only vendors able to provide vessels meeting the Debtors' needs.  Indeed, for certain vessels, the Debtors already contract with every possible vendor.  In other cases, a replacement source, if available, would result in significantly increased costs to the Debtors.  Like the Labor Providers, some Vessel Providers can also assert liens on property—including customer property—on account of amounts owing for vessel services.  Continuing to charter vessels of the same quantity and quality, and on the same favorable terms and availability, is essential to the Debtors' operations and, therefore, to the success of these chapter 11 cases.

17.    *Supplies and Necessaries Providers*.  To operate their vessels, the Debtors purchase equipment, materials, supplies, goods, and other "necessaries" from a variety of vendors (the "**Supplies and Necessaries Providers**").  The Supplies and Necessaries Providers furnish the Debtors with products fundamental to their operations without which the Debtors would be unable to operate their vessels, service their diving customers, or complete their construction projects.  For certain items, only a limited number of vendors can meet the Debtors' volume and quality requirements on a timely, cost-efficient basis.  With respect to other items, particularly specialty equipment and materials—most notably fuel and food—required to operate the vessels, only a single source can provide these.  Any loss of the Supplies and Necessaries Providers following the commencement of these cases would impair the Debtors' ability to preserve and maximize the value of their estates.

18.    Moreover, providers of "necessaries" to a Cal Dive vessel—which often include not only Supplies and Necessaries Providers but Labor Providers, Crew Providers, and Vessel Providers—may hold a maritime lien against that vessel and its equipment.[5]  *See, e.g.*, 46 U.S.C. § 31342(a) ("a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—has a maritime lien on the vessel").  The term "necessaries" encompasses a broad range of goods and services provided to vessels.  The Federal Maritime Lien Act ("**FMLA**")—which governs the creation of maritime liens under U.S. law—defines "necessaries" as "includ[ing] repairs, supplies, towage, and the use of a drydock or marine railway."  46 U.S.C. § 31301(4).  Expanding on the FMLA's non-exhaustive list, U.S. courts have defined "necessaries" generally as "things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged."  *Gulf Marine and Indus. Supplies, Inc. v. GOLDEN PRINCE M/V*, 230 F.3d 178, 180 (5th Cir. 2000).  Satisfaction of the Critical Vendor Claims is thus further warranted because multiple Critical Vendors potentially have liens against the Debtors' vessels for securing the payment of outstanding obligations.

19.    For these reasons, the Debtors request authority to pay the Critical Vendor Claims in an amount up to the Critical Vendor Claims Cap.

**B.    Proposed Terms and Conditions of Payment of Critical Vendor Claims**

20.    If authorized to pay the Critical Vendor Claims, the Debtors will use commercially reasonable efforts to require the applicable Critical Vendors to provide favorable trade terms consistent with historical practice.  The Debtors therefore request authority, but not

---

[5] A maritime lien is a "secret lien" in that the lien is perfected without recording an interest in, obtaining possession of, or filing a claim against a vessel.  *See Bermuda Express NV v. M/V Litsa*, 872 F.2d 554, 557-58 (3d Cir. 1989).  Accordingly, a "necessaries" provider automatically obtains a maritime lien against the vessel and equipment on the vessel for the value (as may be determined) of the goods or services supplied, *see* 46 U.S.C. § 31342(a)(1), and thus potentially has a secured claim that must be satisfied.  The Debtors make no admission as to the nature or value of any claim or lien against any vessel based on "necessaries," and reserve all rights regarding the same.

direction, to condition payment on such party's agreement to continue providing supplies or services to the Debtors in accordance with the Customary Trade Terms, *i.e.* trade terms consistent with those practices and programs in place in the 12 months prior to the Petition Date. The Debtors will also require the applicable Critical Vendors to waive, to the extent their Critical Vendor Claims are satisfied or otherwise, any associated lien rights such vendors may have against the Debtors' vessels or other property of the Debtors or their customers.

21.     To ensure each Critical Vendor's agreement to continue providing supplies or services on Customary Trade Terms for the duration of these chapter 11 cases and, where applicable, memorialize a Critical Vendor's waiver of lien rights for prepetition obligations against a Debtor-owned vessel or other property of the Debtors or their customers, the Debtors may elect to execute trade agreements, as proposed in the form attached as <u>Exhibit 1</u> to the Interim Order (each a "**Trade Agreement**").  Such Trade Agreements, once agreed to and accepted by a Critical Vendor, will be a legally binding contract between the parties governing their commercial trade relationship.

22.     The Debtors also seek limited authority to pay the Critical Vendor Claims in the event that no Trade Agreement has been executed.  The Debtors would exercise this authority only if they determine, in their business judgment, that a formal Trade Agreement is unnecessary to ensure a Critical Vendor's continued performance on Customary Trade Terms; *provided*, *that*, if a Critical Vendor accepts payment and does not (a) continue supplying goods or services to the Debtors in accordance with Customary Trade Terms, or as otherwise set forth in a Trade Agreement or (b) waive and release any lien on property of the Debtors or any of their customers, to the extent its Critical Vendor Claim is satisfied or otherwise, within fifteen (15) days of receipt of payment, then, so long as the Critical Vendor receives notice and opportunity

for a hearing: (i) such payment will be deemed an improper postpetition transfer on account of a prepetition claim and therefore immediately recoverable by the Debtors in cash on written request; (ii) upon recovery by the Debtors, any prepetition claim of such Critical Vendor will be reinstated as if the payment had not been made; and (iii) if there exists an outstanding postpetition balance due from the Debtors to such Critical Vendor, the Debtors may elect to recharacterize and apply any payment made to that outstanding postpetition balance, thus reducing such Critical Vendor's administrative claim, and such Critical Vendor will be required to repay to the Debtors those paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

## II. LEGAL BASIS FOR RELIEF REQUESTED

### A.    The Court Should Authorize the Debtors to Pay Critical Vendor Claims Under Bankruptcy Code Sections 363(b), 364 and 105(a)

23.    Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983).  In so doing, these courts acknowledge that several legal theories rooted in Bankruptcy Code sections 105(a) and 363(b) support the payment of prepetition claims as requested here.

RLF1 11599045v.1

24.     Courts have found a basis for allowing debtors to make payments to creditors under Bankruptcy Code §§ 363 and 364.  Bankruptcy Code section 363(b)(1) provides that, after notice and a hearing, a debtor "may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  11 U.S.C. § 363(b)(1).  Payment of prepetition obligations may be authorized under this section where a sound business purpose exists for doing so.  *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *In re UAL Corp.*, Case No. 02-48191 (Bankr. N.D. Ill. Dec. 11, 2002) (essential trade motion relying upon Bankruptcy Code § 363 is "completely consistent with the Bankruptcy Code;" payments to critical trade vendors have further support when debtor seeks "the extension of credit under § 364 on different than usual terms, terms that might include the payment of a prepetition obligation").

25.     The Court may also rely on Bankruptcy Code section 105(a) to authorize payment of prepetition claims in appropriate circumstances.  Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a), courts may authorize preplan payments of prepetition obligations when essential to the continued operation of a debtor's businesses.  *See In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999).  Specifically, courts may use their power under section 105(a) to authorize payment of prepetition obligations under the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *Ionosphere Clubs*, 98 B.R. at 176.

26.     Recognizing the doctrine of necessity, the United States Court of Appeals for the Third Circuit held in *In re Lehigh & New England Ry. Co* that a court may authorize the

payment of prepetition claims if such payment was essential to the continued operation of the debtor.  657 F.2d 570, 581 (3d Cir. 1981); *see also In re Penn Central Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding doctrine of necessity permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *Just for Feet*, 242 B.R. at 824-25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

27.    Here, payment of the Critical Vendor Claims is necessary to ensure the completion of ongoing construction projects and continued diving operations and, in turn, preserve and enhance the value of the Debtors' estates.  The Debtors have carefully reviewed their accounts payable and undertaken a process to identify vendors essential to ongoing operations.  Without the Critical Vendors' services, the Debtors may be forced to halt most, if not all, ongoing projects immediately while they search for substitute vendors, if any even exist, and the Debtors could be forced to forgo existing favorable trade terms.  Failure to pay the Critical Vendor Claims, in the Debtors' business judgment, would also result in some Critical Vendors asserting and perfecting statutory liens on property of the Debtors' customers, which could greatly harm the Debtors' relationship with key customers and cause those customers to delay or withhold payment to the Debtors.

28.    The Debtors have developed procedures that, if and when implemented will ensure that the Critical Vendors receiving payment of their Critical Vendor Claims will continue to provide goods and services to the Debtors based on the Customary Trade Terms, or such other trade terms as are agreed to by the Debtors and the Critical Vendors.  The retention

RLF1 11599045v.1

and reinstatement of the Customary Trade Terms will enable the Debtors to maximize the value of their business.

29.     Where, as here, payment of select prepetition claims is critical to maximize the value of a debtor's estate, courts in this District routinely authorize such payments.[6] Given the nature of the services provided by the Critical Vendors, the consequences of the Critical Vendors' ceasing to provide goods and services or seeking to enforce liens on customer property or the Debtors' vessels or other property of the Debtors, and the related potential loss of value to the Debtors' estates, similar relief is warranted here, and the Court should authorize the payment of the Critical Vendor Claims under Bankruptcy Code sections 363(b), 364, and 105(a) and the doctrine of necessity.

**B.     The Court Should Authorize Payment of Critical Vendor Claims as a Valid Exercise of the Debtors' Fiduciary Duties**

30.     Payment of the Critical Vendor Claims is also warranted under Bankruptcy Code sections 1107(a) and 1108, which recognize the Debtors as fiduciaries "holding the bankruptcy estate[s] and operating business[es] for the benefit of [their] creditors and (if the value justifies) [their] equity owners." *CoServ*, 273 B.R. at 497.

31.     Courts have noted that a debtor in possession can, in certain instances, fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial

---

[6] *In re Dendreon Corp. et al.*, Case No. 14-12515 (PJW) (Bankr. D. Del. Nov. 12, 2014) (D.I. 57); *In re Source Home Entm't, LLC*, et al., Case No. 14-11553 (KG) (Bankr. D. Del. July 18, 2014) (D.I. 139); *In re Natrol, Inc. et al.*, Case No. 14-11446 (BLS) (Bankr. D. Del. July 15, 2014) (D.I. 238); *In re GSE Envtl., Inc. et al.*, Case No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014) (D.I. 151); *In re Quantum Foods, LLC et al.*, Case No. 14-10318 (KJC) (Bankr. D. Del. Mar. 12, 2014) (D.I. 122); *In re Victor Oolitic Stone Co. d/b/a Indiana Limestone Co.*, No. 14-10311 (CSS) (Bankr. D. Del. Feb. 18, 2014) (D.I. 33).

enhancement of the estate." *Id.* The court provided a three-prong test for determining whether a preplan payment for a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

32.    Payment of the Critical Vendor Claims here meets each element outlined in *CoServ*. First, it is critical that the Debtors deal with the Critical Vendors because the Critical Vendors provide goods and services necessary to the Debtors' ongoing operations and, in many instances, the Critical Vendors have perfected liens or are capable of asserting and perfecting liens in the future against the Debtors' or their customers' property. Second, the Debtors believe that the Critical Vendors would otherwise refuse to, or would be unable to, provide goods and services to the Debtors on a postpetition basis if their prepetition balances are not paid. Accordingly, not paying the Critical Vendor Claims harms the Debtors financially because losing access postpetition to the necessary goods and services provided by the Critical Vendors may force the Debtors to halt ongoing projects and potentially forgo existing favorable trade terms. Third, the Debtors have examined other options short of payment of the Critical Vendor Claims and have determined that, to avoid any unexpected or inopportune interruptions to their business operations, there is no practical alternative to paying the Critical Vendor Claims consistent with the applicable caps. Therefore, the Debtors submit that paying the Critical Vendor Claims is a sound exercise of their fiduciary duties as debtors in possession under Bankruptcy Code sections 1107 and 1108.

RLF1 11599045v.1

**C.    The Court Should Authorize Banks to Honor and Pay Checks Issued and Electronic Funds Transferred to Pay the Critical Vendor Claims**

33.    The Debtors further request that the Court authorize and direct all banking institutions and all other applicable financial institutions to receive, process, honor, and pay any and all checks drawn or electronic funds relating to the Critical Vendor Claims, whether such checks were presented before or after the Petition Date.    Under the Debtors' existing cash management system, checks or wire transfer requests can be readily identified as relating to an authorized payment of the Critical Vendor Claims.    Given those controls, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.    The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers on account of the Critical Vendor Claims, or to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of these chapter 11 cases.    Finally, the Debtors submit that they have sufficient liquidity to pay such amounts as they become due in the ordinary course of the Debtors' businesses.

**D.    Interim Relief Is Necessary to Avoid Immediate and Irreparable Harm**

34.    Under Federal Rule of Bankruptcy Procedure 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the chapter 11 case's commencement to the extent "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as set forth in the First Day Declaration, and relief on an interim basis is therefore appropriate under Federal Rule of Bankruptcy Procedure 6003, if applicable.[7]

---

[7] See the First Day Declaration filed concurrently with this Motion.

35.     The urgency of the relief requested justifies immediate relief.  To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Federal Rule of Bankruptcy Procedure 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Federal Rule of Bankruptcy Procedure 6004(h).

## RESERVATION OF RIGHTS

36.     Nothing contained in this Motion is an admission of the validity of any claim or lien against the Debtors, a waiver of the Debtors' or any other party's rights to dispute any claim or lien, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365.  If this Court grants the relief requested in this Motion, any court-authorized payment is not an admission of the validity of any claim or lien or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim or lien.  In addition, authorization to pay the claims described in this Motion shall not be deemed a direction to the Debtors to pay such claims.

## NOTICE

37.     The Debtors will provide notice of this Motion by facsimile, e-mail, overnight delivery, or hand delivery to: (i) Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to Bank of America, N.A., as the Pre-Petition Senior Agent under the Pre-Petition Senior Loan Agreement and the DIP Facility Agreement (as defined in the DIP Order); (iv) counsel to ABC Funding, LLC, as the Pre-Petition Junior Agent under the Pre-Petition Junior Loan Agreement; (v) Bank of New York Mellon Trust Company, N.A., as the Indenture Trustee for the Convertible Notes; and (vi) the Internal Revenue Service.  Following

the hearing, a copy of this Motion and any order entered with respect to it will be served on the foregoing parties and all parties having filed requests for notice in these chapter 11 cases. A copy of the Motion is also available on the Debtors' case website at https://www.kccllc.net/caldive.

38.     As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

## NO PRIOR MOTION

39.     The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

The Debtors respectfully request entry of interim and final orders granting the relief requested in its entirety and any other relief as is just and proper.

Dated:    March 3, 2015
          Wilmington, Delaware

                                         */s/ Mark D. Collins*
                                          **RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

- and -

**O'MELVENY & MYERS LLP**
George A. Davis (*pro hac vice* pending)
Andrew M. Parlen* (*pro hac vice* pending)
Daniel S. Shamah (*pro hac vice* pending)
Times Square Tower
Seven Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

Suzzanne S. Uhland (*pro hac vice* pending)
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
Telephone:  (415) 984-8700
Facsimile:  (415) 984-8701

Proposed Attorneys for the
Debtors and Debtors in Possession

*Admitted in CA; Not Admitted to Practice in NY

**Exhibit A**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

In re:

CAL DIVE INTERNATIONAL, INC., *et al.*,[1]

Debtors.

: Chapter 11
:
: Case No. 15-10458 (    )
:
:
: Joint Administration Requested
:
: Related Docket No. ___

-------------------------------------------------------------x

## INTERIM ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS AND GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an interim order (this "**Order**"), under §§ 105(a), 363(b), 364, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, (i) authorizing, but not directing, the Debtors to pay Critical Vendor Claims in an amount not to exceed the applicable Critical Vendor Claims Cap and (ii) granting related relief, as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances; and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the interim relief requested in the Motion (the "**Hearing**"); and upon the First Day Declaration, record of the Hearing, and all the proceedings had before the Court; and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Cal Dive International, Inc. (0501), Cal Dive Offshore Contractors, Inc. (4878), Affiliated Marine Contractors, Inc. (8678), Fleet Pipeline Services, Inc. (2104), Gulf Offshore Construction, Inc. (2106), and CDI Renewables, LLC (4985).  The Debtors' corporate headquarters is at 2500 CityWest Boulevard, Suite 2200, Houston, TX 77042.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

the Court having found and determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Federal Rule of Bankruptcy Procedure 6003, and that such relief is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "**Final Hearing**") on the Motion shall be held on _____, 2015, at\_\_:\_\_ \_.m. (prevailing Eastern Time).  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on \_\_\_\_ _____, 2015, and served on the following parties:  (i) Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to Bank of America, N.A., as the Pre-Petition Senior Agent under the Pre-Petition Senior Loan Agreement and the DIP Facility Agreement (as defined in the DIP Order); (iv) counsel to ABC Funding, LLC, as the Pre-Petition Junior Agent under the Pre-Petition Junior Loan Agreement; (v) Bank of New York Mellon Trust Company, N.A., as the Indenture Trustee for the Convertible Notes; and (vi) the Internal Revenue Service. A copy of this Motion and this Order will be served on the foregoing parties and all parties having filed requests for notice in these chapter 11 cases.  Due to the nature of the relief requested in the Motion, no other or further notice need be given.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

2

3.      The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay all or part of and discharge, on a case-by-case basis, the Critical Vendor Claims in an amount not to exceed $2,600,000 during the first 21 days following the Petition Date (the "**Critical Vendor Claims Cap**"), *provided, that* any payment made, authorization contained or claim for which payment is authorized hereunder shall be subject to the *Interim Order (i) Authorizing Debtors to (a) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), (b) Grant Senior Liens and Superpriority Administrative Expense Status, and (c) Utilize Cash Collateral Pursuant To 11 U.S.C. § 363; (ii) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364; (iii) Scheduling Final Hearing; and (iv) Granting Related Relief* and any order granting such relief on a final basis (together, the "**DIP Order**"), including, but not limited to the Budget (as defined in the DIP Order).

4.      The form of Trade Agreement, as it appears in Exhibit 1 attached hereto, is approved in its entirety, and the Debtors are authorized to negotiate, modify, or amend the form of Trade Agreement in their reasonable business judgment.

5.      The Debtors are authorized, but not directed, to condition payment of the Critical Vendor Claims on the execution of a Trade Agreement, and the Debtors are authorized to enter into such Trade Agreements when and if the Debtors determine, in the exercise of their reasonable business judgment, that doing so is appropriate, and conditioned upon the waiver and release by any Critical Vendor of any asserted lien against property of the Debtors or any customer of the Debtors to the extent its Critical Vendor Claim is satisfied or otherwise (including without limitation by executing such documentation evidencing such release as the Debtors, in their reasonable business judgment, may reasonably deem necessary), in each case

3

within fifteen (15) days of receipt of payment by such Critical Vendor.

6.    If a Critical Vendor accepts payment, whether or not under a Trade Agreement, and does not continue supplying goods or services to the Debtors in accordance with trade terms consistent with those practices and programs (including credit limits, pricing, timing of payments, and availability) in place in the 12 months before the Petition Date (collectively, the "**Customary Trade Terms**") or as otherwise set forth in a Trade Agreement or as otherwise agreed, or such Critical Vendor refuses to waive and release, to the extent its Critical Vendor Claim is satisfied, a lien against any property of the Debtors or any customer of the Debtors within fifteen (15) days following such Critical Vendor's receipt of payment, then, so long as the Critical Vendor receives notice and opportunity for a hearing: (a) any payment on account of a prepetition claim received by a Critical Vendor will be deemed an improper postpetition transfer and therefore immediately recoverable by the Debtors in cash on written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such Critical Vendor shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made to such outstanding postpetition balance, and that Critical Vendor will be required to repay to the Debtors those paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

7.    The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts prior to the Petition Date for the Critical Vendor Claims that have not been honored and paid as of the Petition Date (or to reissue checks, drafts,

electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Order, *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such payments.

8.      Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) shall be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any related rights, claims, or defenses related; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy, or lease under Bankruptcy Code section 365.

9.      The requirements set forth in Federal Rule of Bankruptcy Procedure 6004(a) are hereby waived.

10.     Notwithstanding the applicability of Federal Rule of Bankruptcy Procedure 6004, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

12.    This Court shall retain jurisdiction over all matters arising from or related

to the implementation or interpretation of this Order.


Dated: _____, 2015          _____
Wilmington, Delaware                          United States Bankruptcy Judge

6

## **EXHIBIT 1**

**Form of Trade Agreement**

## TRADE AGREEMENT

Cal Dive Offshore Contractors, Inc. (as defined herein) (the "**Company**"), on the one hand, and **[VENDOR]** ("**Vendor**"), on the other hand, hereby enter into the following trade agreement (this "**Trade Agreement**") dated as of this **[DATE]**.

## RECITALS

WHEREAS on **[DATE]** (the "**Petition Date**"), Cal Dive International, Inc. and certain of its subsidiaries, including the Company (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

WHEREAS on **[DATE]**, the Court entered the *Interim Order Authorizing the Debtors to Pay Prepetition Claims of Critical Vendors and Granting Related Relief* (the "**Critical Vendor Order**") **[Docket No. ▪]** authorizing the Debtors, under certain conditions, to pay the prepetition claims of certain suppliers, including Vendor, subject to the terms and conditions set forth therein.[1]

WHEREAS prior to the Petition Date, Vendor **[provided supplies/services]** to the Company, and the Company paid Vendor for such **[supplies/services]**, according to Customary Trade Terms (as defined herein).

WHEREAS the Company and Vendor (each a "**Party**," and collectively, the "**Parties**") agree to the following terms as a condition of payment on account of certain pre-petition claims Vendor may hold against the Company.

## AGREEMENT

1.      **Recitals**.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.      **Vendor Payment**.  The Parties agree that Vendor holds a prepetition claim against the Company in the amount of $[▪] (the **"Agreed Vendor Claim"**).  Following execution of this Trade Agreement, the Company will pay Vendor $[▪] on account of Agreed Vendor Claim (the "**Vendor Payment**").  The Vendor Payment will be applied to invoices previously received by the Company on account of the Agreed Vendor Claim as such invoices become due and payable.

3.      **Agreement to Supply**.

a.      Vendor will supply goods to the Company based on the following "**Customary Trade Terms**":  The trade terms consistent with those  practices and programs

---

[1]    Capitalized terms used but not defined herein shall have the meanings set forth in the Critical Vendor Order.

(including credit limits, pricing, timing of payments, and availability) in place in the 12 months before the Petition Date, which shall include **[specific trade terms]**.

        b.      Vendor will continue all **[provision of supplies/services]** in the ordinary course and will **[fill orders for supplies requested by the Company/provide services]** in the ordinary course of business under the Customary Trade Terms.

        c.      The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed-to in writing by the Parties.

    4.      **Waiver of Liens**.  Vendor agrees that upon receipt of the Vendor Payment, all liens, including, without limitation, all maritime, mechanic's, or materialman's liens, against property of the Company or property of a customer of the Company for unpaid prepetition obligations shall automatically be released and terminated without any further action on the part of the Company or the Vendor.  Upon the request of the Company, Vendor agrees to promptly (and in any event within fifteen (15) days of receipt of payment under this Trade Agreement) (i) execute and deliver all such further documents (including lien releases, termination statements and reconveyancing documents) and (ii) take all such action as may be reasonably necessary or appropriate in order to effectively confirm or carry out the provisions of this Trade Agreement.

    5.      **Confirmation and Plan Matters**.

        a.      Vendor agrees that it will not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding administrative claims Vendor may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due.  Vendor agrees that such claims will be paid in the ordinary course of business after confirmation of a plan under the Customary Trade Terms then in effect.  The Vendor Payment will be made concurrently with payment of other outstanding administrative clams as provided in a confirmed plan.

        b.      Vendor will not separately seek payment from the Company on account of any prepetition claim outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 case.

    6.      **Vendor Breach**.

        a.      In the event that Vendor fails to satisfy its undisputed obligations arising under this Trade Agreement (a "**Vendor Breach**"), upon written notice to Vendor, Vendor shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Vendor Payment or any portion of the Vendor Payment which cannot be recovered by the Company from the post-petition receivables then owing to Vendor from the Company.

        b.      In the event that the Company recovers the Vendor Payment under Section 6(a) hereof or otherwise, the full Agreed Vendor Claim shall be reinstated as if the Vendor Payment had not been made.

c.    Vendor agrees and acknowledges that irreparable damage would occur in the event of a Vendor Breach and remedies at law would not be adequate to compensate the Company.  Accordingly, Vendor agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief.  The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement.  Vendor hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.

7.    **Notice**.

If to Vendor:

[▪]

and

[▪]

If to Company:

Lisa Manget Buchanan, General Counsel
**CAL DIVE INTERNATIONAL, INC.**
2500 CityWest Boulevard, Suite 2200
Houston, TX 77042

and

George A. Davis
Andrew M. Parlen
**O'MELVENY & MYERS LLP**
Times Square Tower
Seven Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

8.    **Representations and Acknowledgements**.  The Parties agree, acknowledge and represent that:

a.    the Parties have reviewed the terms and provisions of the Critical Vendor Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved under the Critical Vendor Order;

    b.  any payments made on account of the Agreed Vendor Claim shall be subject to the terms and conditions of the Critical Vendor Order;

    c.  if Vendor refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder (including, without limitation, any failure to take such action as may be necessary to evidence its waiver and release of any lien), the Company may exercise all rights and remedies available under the Critical Vendor Order, the Bankruptcy Code, or applicable law; and

    d.  in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of **[provision of supplies/services]** from Vendor to the Company, until a ruling of the Court is obtained.

   9.  **Confidentiality**.  Vendor agrees to hold in confidence and not disclose to any party:  (a) this Trade Agreement; (b) any and all payments made by the Company under this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "**Confidential Information**"); **provided**, **that**, if any party seeks to compel Vendor's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Vendor intends to disclose any or all of the Confidential Information, Vendor shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; **provided**, **further**, **that**, if such remedy is not obtained, Vendor shall furnish only such information as Vendor is legally required to provide.

   10.  **Miscellaneous**.

    a.  The Parties hereby represent and warrant that:  (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

    b.  This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  This Trade Agreement may not be changed, modified, amended or supplemented, except in a writing signed by both Parties.

    c.  Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

    d.  This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

    e.  The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement.

f.       This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

**Exhibit B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------x

In re:                                          : Chapter 11
                                                :
CAL DIVE INTERNATIONAL, INC., *et al.*,[1]      : Case No. 15-10458 (   )
                                                :
Debtors.                                        : (Jointly Administered)
                                                :
                                                : Related Docket No. ___

---------------------------------------------------------------x

**FINAL ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF**
**CRITICAL VENDORS AND GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of a final order (this "**Order**"), under §§ 105(a), 363(b), 364, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.,* (i) authorizing, but not directing, the Debtors to pay Critical Vendor Claims in an amount not to exceed the applicable Critical Vendor Claims Cap and (ii) granting related relief, as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances; and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and hearings having been held to consider the relief requested in the Motion on an interim basis (the "**Interim Hearing**") and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Cal Dive International, Inc. (0501), Cal Dive Offshore Contractors, Inc. (4878), Affiliated Marine Contractors, Inc. (8678), Fleet Pipeline Services, Inc. (2104), Gulf Offshore Construction, Inc. (2106), and CDI Renewables, LLC (4985). The Debtors' corporate headquarters is at 2500 CityWest Boulevard, Suite 2200, Houston, TX 77042.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

on a final basis (the "**Final Hearing**" and together with the Interim Hearing, the "**Hearings**"); and the Court having entered an order granting the Motion on an interim basis (the "**Interim Order**"); and upon the First Day Declaration, record of the Hearings, and all the proceedings had before the Court; and the Court having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearings establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein on a final basis.

2.      The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay all or part of and discharge, on a case-by-case basis, the Critical Vendor Claims in an amount not to exceed $8,700,000 (the "**Critical Vendor Claims Cap**"), absent further order of the Court, *provided, that* any payment made, authorization contained or claim for which payment is authorized hereunder shall be subject to the *Interim Order (i) Authorizing Debtors to (a) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), (b) Grant Senior Liens and Superpriority Administrative Expense Status, and (c) Utilize Cash Collateral Pursuant To 11 U.S.C. § 363; (ii) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364; (iii) Scheduling Final Hearing; and (iv) Granting Related Relief* and any order granting such relief on a final basis (together, the "**DIP Order**"), including, but not limited to the Budget (as defined in the DIP Order).

3.      The Debtors are authorized, but not directed, to condition payment of the Critical Vendor Claims on the execution of a Trade Agreement, substantially in the form

- 2 -

attached as <u>Exhibit 1</u> to the Interim Order, and the Debtors are authorized to enter into such Trade Agreements when and if the Debtors determine, in the exercise of their reasonable business judgment, that doing so is appropriate, and conditioned upon the waiver and release by any Critical Vendor of any asserted lien against property of the Debtors or any customer of the Debtors to the extent its Critical Vendor Claim is satisfied or otherwise (including without limitation by executing such documentation evidencing such release as the Debtors, in their reasonable business judgment, may reasonably deem necessary), in each case within fifteen (15) days of receipt of payment by such Critical Vendor.

4.      If a Critical Vendor accepts payment, whether or not under a Trade Agreement, and does not continue supplying goods or services to the Debtors in accordance with trade terms consistent with those practices and programs (including credit limits, pricing, timing of payments, and availability) in place in the 12 months before the Petition Date (collectively, the "**Customary Trade Terms**") or as otherwise set forth in a Trade Agreement or as otherwise agreed, or such Critical Vendor refuses to waive and release, to the extent its Critical Vendor Claim is satisfied, a lien against any property of the Debtors or any customer of the Debtors within fifteen (15) days following such Critical Vendor's receipt of payment, then, so long as the Critical Vendor receives notice and opportunity for a hearing: (a) any payment on account of a prepetition claim received by a Critical Vendor will be deemed an improper postpetition transfer and therefore immediately recoverable by the Debtors in cash on written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such Critical Vendor shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made to such outstanding postpetition balance, and that Critical Vendor will be

- 3 -

required to repay to the Debtors those paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

5.       The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts prior to the Petition Date for the Critical Vendor Claims that have not been honored and paid as of the Petition Date (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Order, *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such payments.

6.       Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) shall be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any related rights, claims, or defenses; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy, or lease under Bankruptcy Code section 365.

7.       Nothing in the Motion or this Order shall prejudice the Debtors' right to request further authority from this Court, after notice and an opportunity for a hearing, to pay any Critical Vendor Claims in excess of the Critical Vendor Claims Cap.

- 4 -

8.      The requirements set forth in Federal Rule of Bankruptcy Procedure 6004(a) are hereby waived.

9.      Notwithstanding the applicability of Federal Rule of Bankruptcy Procedure 6004, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

10.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

11.     This Court shall retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.


Dated: _____, 2015
Wilmington, Delaware                          _____
                                                        United States Bankruptcy Judge