**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CAL DIVE INTERNATIONAL, INC., *et al.*,[1] | : | Case No. 15-10458 (CSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Hearing Date: April 6, 2015 at 10:00 a.m.** |
| | : | **Objection Deadline: March 30, 2015 at 4:00 p.m.** |

-------------------------------------------------------------------x

**MOTION FOR AN ORDER UNDER 11 U.S.C. §§ 105(a) AND 363(b) AUTHORIZING
EMPLOYMENT CARL MARKS ADVISORY GROUP LLC AS CRISIS MANAGERS
FOR THE DEBTORS AND F. DUFFIELD MEYERCORD AS CHIEF RESTRUCTURING
OFFICER OF THE DEBTORS *NUNC PRO TUNC* TO MARCH 12, 2015**

Cal Dive International, Inc. ("**Cal Dive**") and its affiliated debtors and debtors in

possession in these cases (collectively, the "**Debtors**"), by this motion (this "**Motion**"),

respectfully request entry of an order, *nunc pro tunc* to March 12, 2015, authorizing Cal Dive,

under Bankruptcy Code sections 105(a) and 363(b), to (i) retain Carl Marks Advisory Group

LLC ("**CMAG**") as the Debtors' crisis managers and in such capacity to provide the Debtors

certain additional personnel (the "**Additional Personnel**"), and (ii) appoint F. Duffield

Meyercord Cal Dive's Chief Restructuring Officer.  In support of this Motion, the Debtors

submit the Declaration of F. Duffield Meyercord (the "**Meyercord Declaration**"), a copy of

which is attached to this Motion as Exhibit B.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Cal Dive International, Inc. (0501), Cal Dive Offshore Contractors, Inc. (4878), Affiliated Marine Contractors, Inc. (8678), Fleet Pipeline Services, Inc. (2104), Gulf Offshore Construction, Inc. (2106), and CDI Renewables, LLC (4985).  The Debtors' corporate headquarters is at 2500 CityWest Boulevard, Suite 2200, Houston, TX 77042.

## JURISDICTION & VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b).[2]

## BACKGROUND

2.      On March 3, 3015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108.  The Court has entered an order jointly administering these chapter 11 cases [D.I. 57]. Further information regarding the Debtors' business operations, capital structure, and reasons for commencing these cases is set forth in *Quinn J. Hébert's Declaration in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**") [D.I. 15].

## RELIEF REQUESTED

3.      By this Motion, the Debtors respectfully request entry of an order—as proposed in Exhibit A—under Bankruptcy Code sections 105(a) and 363(b), authorizing Cal Dive to (i) retain CMAG as the Debtors' crisis managers and in such capacity to provide the Debtors with Additional Personnel, and (ii) appoint F. Duffield Meyercord Cal Dive's Chief Restructuring Officer, *nunc pro tunc* to March 12, 2015.

---

[2] Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

**BASIS FOR RELIEF REQUESTED**

**I.  FACTS SPECIFIC TO RELIEF REQUESTED**

**A.        The Debtors' Need for a CRO and the Selection Process**

4.        The Debtors, in consultation with their DIP Lenders,[3] have determined in their business judgment that they and their estates would benefit from the services of a firm with experience in crisis management and complex chapter 11 reorganizations along with an similarly experienced officer to help guide them through these cases.

5.        To that end, leading up to and immediately following the filing of these cases, the Debtors sought to identify a firm to provide a knowledgeable and respected Chief Restructuring Officer and other consulting services.  Cal Dive interviewed five candidates based on the candidates' substantial restructuring experience, knowledge of the Debtors' industry, and familiarity with the Debtors' businesses and the challenges the Debtors face.  The Debtors' management narrowed these candidates down to two finalists, who each then made presentations to Cal Dive's board of directors.

6.        Informed by the board presentations, interviews, and other due diligence, Cal Dive chose to retain CMAG to serve as the Debtors' crisis managers and, in that capacity, to provide Mr. Meyercord as Cal Dive's Chief Restructuring Officer under the terms of the agreement between Cal Dive and CMAG, dated March 12, 2015 (the "**Retention Agreement**"). A copy of the Retention Agreement is attached to this Motion as Exhibit C.

7.        CMAG is well-suited to serving as the Debtors' crisis manager and providing them a CRO.  CMAG is a nationally recognized consulting and investment banking firm that provides services in areas ranging from corporate finance and transaction advisory to

---

[3] As used in this Motion, "**DIP Lenders**" refers to the lenders party to the Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement, dated March 3, 2015 (the "**DIP Facility Agreement**").

performance improvement and operational and financial restructuring. CMAG has advised numerous companies in significant restructurings and asset sales in recent years, including Associated Wholesalers, Anesthesia Healthcare Partners, Belle Foods, Landauer Healthcare Holdings, and NES Rentals.

8. Similarly, Mr. Meyercord is well-qualified to serve as Cal Dive's CRO. Mr. Meyercord is the managing partner of CMAG and has more than 35 years of experience directing strategic projects and providing operational and financial advisory services to businesses across various industries. Mr. Meyercord has extensive experience in turnarounds, restructurings, chapter 11 reorganizations, and section 363 sales, having served as a chief restructuring officer or lead turnaround professional for multiple companies in a wide array of industries. He also has specific experience in related industries, having served as a director and Chief Restructuring Officer of United Vision Logistics, Pacific Crane Maintenance, Trailer Bridge, and other companies.

9. In light of CMAG's excellent reputation and deep experience assisting distressed companies, the Debtors believe CMAG and, in particular, Mr. Meyercord, will provide the experience and oversight necessary to guide the Debtors through chapter 11.

**B.      Scope of Services / Terms of Retention**

10. Cal Dive proposes to appoint Mr. Meyercord as CRO and to retain CMAG to provide the Additional Personnel (together with Mr. Meyercord, the "**Engagement Personnel**") on the terms and conditions set forth in the Retention Agreement. Working with the Debtors' senior management team and the Debtors' boards of directors, as well as the Debtors' other professionals, the Engagement Personnel will assist the Debtors in evaluating and implementing strategic and tactical options throughout the chapter 11 process.

11. The Engagement Personnel will support the Debtors in, among other things:

a. managing and coordinating the Debtors' compliance with the milestones set forth in its DIP Facility Agreement, including sales of assets as provided therein;

b. managing the process for the Debtors' engagement of brokers, investment bankers and other professionals in connection with the asset sales;

c. providing comprehensive restructuring advisory and crisis management services;

d. reviewing the Debtors' current financial condition and the related financial projections along with their underlying assumptions, and assisting in preparing financial information for distribution to the Debtors' constituents, the DIP Lenders, and the second lien administrative agent, including, without limitation, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which the Debtors seek Bankruptcy Court approval;

e. reviewing, analyzing, and, if necessary, assisting in developing cash flow forecasts and liquidity budgets to help manage cash and monitor DIP financing as necessary;

f. advising the Debtors on negotiations with key constituents;

g. assisting in and advising the Debtors in formulating and implementing a cost reduction plan, including actions that may involve operational changes and rejection of executory contracts that may be possible in chapter 11;

h. assisting the Debtors in formulating and negotiating an acceptable chapter 11 plan and preparing a disclosure statement;

i. assisting management in developing presentations regarding the status of restructuring activities and the Debtors' current or future financial performance, as Cal Dive requests;

j. participating in conference calls and attending meetings of Cal Dive's Board of Directors, creditors, or other parties in interest;

k. participating in biweekly conference calls with the Debtors' DIP Lenders and the second lien administrative agent;

l. providing management assistance and/or stepping into certain management or executive roles in the event there are executive departures;

    m.    assisting in coordinating the Debtors' reporting requirements under their existing debtor-in-possession financing obligations, as requested;

    n.    providing administrative support for the Debtors' chapter 11 cases and proposed asset sales;

    o.    providing post-closing support for any potential sales;

    p.    providing valuation services, as required on a mutually agreeable fee basis, including expert testimony in preparation for contested hearings and trials; and

    q.    performing such other tasks and duties related to this engagement as are directed by Cal Dive and are reasonably acceptable to CMAG.

12.    These services are necessary to enable the Debtors to operate their business efficiently in chapter 11, consummate the asset sale processes, and pursue a going-concern sale or reorganization of the Core Business, all while maximizing the value of their estates and successfully administering their chapter 11 cases.  The Debtors intend and believe that the Engagement Personnel's services will complement, and not duplicate, the services rendered by any other professional retained in these chapter 11 cases.  CMAG understands that the Debtors have retained and may retain additional professionals during the term of CMAG's engagement, and CMAG has agreed that the Engagement Personnel will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors, and to avoid the unnecessary duplication of services.

13.    Under the terms of the Retention Agreement, Mr. Meyercord will serve as the Cal Dive's CRO and report directly to Cal Dive's Board of Directors.  In addition, upon the Debtors' consent that additional resources are required and will not duplicate the activities of other employees or professionals, CMAG will provide the services of the Additional Personnel to support Mr. Meyercord.

14.    The terms of the retention of the Engagement Personnel are set forth in detail in the Retention Agreement and are summarized as follows:

(a)    <u>Term</u>.  Upon approval by the Court, the Retention Agreement will be deemed to have commenced on March 12, 2015.  Either Cal Dive or CMAG may terminate the Retention Agreement for any reason upon 10 business days' written notice to the other party.

(b)    <u>Fees</u>.  Cal Dive will pay CMAG a monthly advisory fee of $315,000, prorated to $203,226 for March 2015, and prorated accordingly for the last month of the Retention Agreement, commencing on March 12, 2015, and concluding on the date the Retention Agreement is terminated. Upon this Court's approval of the Retention Agreement, Cal Dive will pay CMAG a $35,000 retainer.

(c)    <u>Expenses</u>.  In addition to the fees set forth above, CMAG will bill for reasonable and documented out-of-pocket expenses it incurs in the performance of its duties under the Retention Agreement.

(d)    <u>Indemnification</u>.  Cal Dive will indemnify Mr. Meyercord and CMAG personnel solely to the extent indemnification is provided for Cal Dive's other officers and directors as provided for in Cal Dive's corporate bylaws, under applicable state law, and in Cal Dive's existing insurance policies.

15.    Cal Dive seeks to enter into the Retention Agreement under Bankruptcy Code section 363, rather than retaining CMAG as professionals under Bankruptcy Code section 327.  CMAG's retention, as described more fully in the Retention Agreement and as provided for in greater detail in the proposed order, is consistent with the protocols for retaining crisis managers in this district.  Specifically, if the Court approves the relief requested herein, CMAG will not be required to submit fee applications under Bankruptcy Code sections 330 and 331. CMAG will, however, submit compensation and staffing reports in accordance with the protocols for the retention of crisis managers in this district.

## C.    Disclosures Regarding CMAG's Connections to the Estates

16.    Though the Debtors submit that the retention of CMAG is not governed by Bankruptcy Code section 327, the Meyercord Declaration discloses, among other matters, any relationship that CMAG and Mr. Meyercord have with the Debtors, their creditors, and other parties in interest.  Unless discussed in the Meyercord Declaration, neither CMAG nor Mr.

Meyercord has any connection with, or any interest adverse to, the Debtors, their creditors, or any parties in interest. To the extent Mr. Meyercord or CMAG have relationships with any parties in interest in these cases, those relationships are set forth in the Meyercord Declaration. Mr. Meyercord and CMAG reserve the right to supplement the Meyercord Declaration in the event they learn of any connection with any other parties in interest in these cases. Accordingly, the Debtors submit that Mr. Meyercord and CMAG do not hold any adverse interests such to disqualify their service in these chapter 11 cases.

## II. LEGAL BASIS FOR RELIEF REQUESTED

17.     Bankruptcy Code section 363(b)(1) provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Further, under Bankruptcy Code section 105(a), the "court may issue any order, process, or judgment that is necessary to carry out the provisions of this title."

18.     The court should approve the debtor's proposed use of its assets under Bankruptcy Code section 363(b) if the proposed use reflects the debtor's reasonable business judgment. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, the court defers to the trustee's judgment so long as there is a "legitimate business justification"); *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought under section 363(b)); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1990) (applying "business justification" test to transactions outside the ordinary course of business); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (applying the "sound business purpose" test); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "articulated business justification").

19.    A debtor, under section 363(b), may employ one or more individuals to serve as restructuring officers or managers.  *See In re Tokheim Corp.*, Case No. 02-13437 (RJN) (Bankr. D. Del. Feb. 25, 2003).  Numerous courts in this district have authorized retention of officers utilizing this Bankruptcy Code provision.  *See, e.g.*, *In re Caché, Inc.*, Case No. 15-10172 (MFW) (Bankr. D. Del. Mar. 3, 2015) (D.I. 253) (authorizing retention of chief restructuring officer); *In re Endeavour Operating Corp.*, Case No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (D.I. 156); *In re FCC Holdings, Inc.*, Case No. 14-11987 (CSS) (Bankr. D. Del. Sept. 22, 2014) (D.I. 158); *In re Windsor Petroleum Transport Corp.*, Case No. 14-11708 (PJW) (Bankr. D. Del. Aug. 12, 2014) (D.I. 54); *In re The Dolan Company*, Case No. 14-10614 (BLS) (Bankr. D. Del. Apr. 15, 2014) (D.I. 156); *In re Longview Power, LLC*, Case No. 13-12211 (BLS) (Bankr. D. Del. Dec. 16, 2013) (D.I. 623).

20.    Cal Dive's decision to retain CMAG and designate Mr. Meyercord as its CRO is a reasonable exercise of Cal Dive's business judgment and in the best interests of the Debtors' estates.  As discussed above, Cal Dive, in consultation with its lenders, underwent a rigorous selection process, interviewing numerous candidates to fill the position of CRO and to provide supporting services to the CRO.  Cal Dive selected CMAG and Mr. Meyercord based on their substantial experience and knowledge with restructuring cases generally and their familiarity with the Debtors' industry, business, and the particular challenges the Debtors face.

21.    Based on the foregoing, the Debtors submit that the relief requested herein is necessary and appropriate, is in the best interests of their estates and all other interested parties, and should be granted in all respects.

## NOTICE

22.    The Debtors will provide notice of this Motion by facsimile, e-mail, overnight delivery, or hand delivery to: (i) Office of the United States Trustee for the District of

Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to Bank of America, N.A., as the Agent under the Debtors' pre-petition senior financing arrangements and the DIP Facility Agreement; (iv) counsel to ABC Funding, LLC, as the Pre-Petition Junior Agent under the Pre-Petition Junior Loan Agreement; (v) Bank of New York Mellon Trust Company, N.A., as the Indenture Trustee for the Convertible Notes; (vi) any statutory committee appointed in these chapter 11 cases; (vii) the Internal Revenue Service; and (viii) any party that has requested notice under Bankruptcy Rule 2002(i).    A copy of the Motion is also available on the Debtors' case website at https://www.kccllc.net/caldive.

23.    The Debtors submit that no other or further notice is necessary under the circumstances.

## NO PREVIOUS REQUEST

24.    No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  March 13, 2015

Lisa M. Buchanan
Chief Administrative Officer, Executive Vice
President, General Counsel and Secretary
Cal Dive International, Inc.