IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CAL DIVE INTERNATIONAL, INC., *et al.*,[1] | : | Case No. 15-10458 (CSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Objection Deadline: May 20, 2015 at 4:00 p.m.**<br>**Hearing Date: May 27, 2015 at 11:00 a.m.** |

------------------------------------------------------------------------------------x

**DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING CAL DIVE OFFSHORE
CONTRACTORS, INC. TO SELL THE *ATLANTIC* AND RELATED ASSETS FREE
AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND
<u>(II) GRANTING RELATED RELIEF</u>**

Cal Dive International, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") seek entry of an order (the "**Sale Order**"), pursuant to Bankruptcy Code section 363, Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (i) authorizing Cal Dive Offshore Contractors, Inc. ("**CDOCI**") to sell the United States flagged derrick barge, *Atlantic*, including all tackle, equipment, machinery, electronics, spare parts, drawings, operating manuals, and necessaries, if any, appertaining thereto (collectively, the "*Atlantic*"), pursuant to that certain Vessel Purchase and Sale Agreement, dated May 1, 2015 (the "**PSA**"),[2] between CDOCI and Weeks Marine, Inc. (the "**Purchaser**"), free and clear of all liens, claims, encumbrances and other interests to the Purchaser (the "**Sale**") and (ii) granting

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Cal Dive International, Inc. (0501), Cal Dive Offshore Contractors, Inc. (4878), Affiliated Marine Contractors, Inc. (8678), Fleet Pipeline Services, Inc. (2104), Gulf Offshore Construction, Inc. (2106), and CDI Renewables, LLC (4985). The Debtors' corporate headquarters is at 2500 CityWest Boulevard, Suite 2200, Houston, TX 77042.

[2] A true and correct copy of the PSA is attached to the Hébert Declaration as <u>Exhibit 1</u> thereto.

RLF1 11943232v.1

certain related relief. In support of this Motion, the Debtors rely on the *Declaration of Quinn Hébert in Support of Debtors' Motion for an Order (I) Authorizing Cal Dive Offshore Contractors, Inc. to Sell the Atlantic and Related Assets Free and Clear of All Liens, Claims and Encumbrances and (II) Granting Related Relief* (the "**Hébert Declaration**"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).[3]

## BACKGROUND

**A.      Chapter 11 Filings**

2.      On March 3, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108. The United States Trustee has appointed an Official Committee of Unsecured Creditors in these cases [D.I. 119].

**B.      The *Atlantic***

3.      The *Atlantic* is a derrick barge used for offshore platform installation and removal. The *Atlantic* has not operated since April 2014, and is one of ten vessels stacked at the Debtors' facility in Port Arthur, Texas.

---

[3] Under rule 9013-1(f) of the Local Rules, the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

4. The *Atlantic* is currently "out of class," meaning that it cannot be moved from dock or used for a project until it is recertified by the Coast Guard through a drydock inspection and any resulting required repairs and maintenance are performed. The Debtors estimate that a minimum expenditure of $3,700,000 to $4,500,000 is required to bring the *Atlantic* into class.

C. **The Debtors' Sale and Marketing Process**

5. As part of the Debtors' prepetition restructuring efforts, the Debtors marketed and attempted to sell certain assets, including since June 2014, the *Atlantic*. The Debtors retained an advisory firm to manage the sale of their business units as a going concern and, at the same time, engaged brokers to sell noncore assets—like the *Atlantic*—on a standalone basis.

6. Since the Petition Date, the Debtors' extensive marketing and sale efforts have continued on two similar parallel processes: First, Carl Marks Advisory Group LLC, the Debtors' crisis manager, is conducting a process to sell the Debtors' assets as a going concern through a sale transaction under Bankruptcy Code section 363 or a chapter 11 plan. Second, the Debtors' proposed ship broker in these cases, Derrick Offshore Ltd. ("**Derrick**"), is marketing for sale assets that the Debtors anticipate will not be subject to a going concern sale. At the time that negotiations with the Purchaser commenced, Derrick was not engaged by the Debtors and thus will not receive a commission if the Sale is completed. Derrick, however, will solicit higher and better bids for the *Atlantic* and will be paid a commission if successful.

7. Based on the Debtors' extensive marketing efforts, it is widely known among potential buyers that the Debtors are seeking to sell their noncore assets in the near-term,

including the *Atlantic*. In fact, the Purchaser approached the Debtors directly to express interest in purchasing the vessel.

**D.    The Sale**

8.    In accordance with the PSA, the Purchaser has agreed to purchase the *Atlantic* for $4,500,000 (the "**Purchase Price**") free and clear of all liens and encumbrances. The Debtors understand that the Purchaser intends to deploy the *Atlantic* for an infrastructure project commencing mid-summer 2015 and that the Purchaser accordingly must close the Sale by May 29, 2015 to ensure sufficient time to perform the required drydock inspection of the vessel. If the Sale Order is entered on or before May 27, 2015, the Debtors anticipate that the Sale will close on time.

**E.  Competing Bids**

9.    Given the extensive marketing process that occurred prior to the Petition Date, the Debtors do not believe that holding a public auction process for the *Atlantic* will result in a higher and otherwise better offer. Nonetheless, the Debtors will provide notice of this motion, including the PSA, to all known parties that expressed an interest in acquiring the *Atlantic* and will accept competing bids (a "**Competing Bid**") for the *Atlantic* until May 25, 2015 at 5:00 p.m. Eastern Daylight Time (the "**Bid Deadline**"). Additionally, as noted above, Derrick will affirmatively market the *Atlantic* until the Bid Deadline. In the event that the Debtors accept a Competing Bid, the Debtors propose to pay the Purchaser a breakup fee of 2% of the Purchase Price (*i.e.* $90,000) (the "**Break-Up Fee**").

10.    To constitute a Competing Bid: (i) net proceeds to the estate after payment of the Break-Up Fee and payment of any brokerage commission must exceed the Purchase Price by $50,000; (ii) provide for a deposit of $540,000 (*i.e.* match the 10% deposit placed by the

Purchaser plus the amount of the Break-Up Fee); and (iii) otherwise conform to the terms of the PSA.

11. If the Debtors receive Competing Bids, the Debtors will hold an auction among those submitting Competing Bids on May 26, 2015 at a time and place to be determined.

**REQUIRED DISCLOSURES PURSUANT TO LOCAL RULE 6004-1**[4]

12. In accordance with Local Rule 6004-1, certain terms of the PSA are described below:

- a. **Assets**. The assets include the United States flagged derrick barge, "*Atlantic*," Official No.: 652734, including all tackle, equipment, machinery, electronics, spare parts, drawings, operating manuals, and necessaries, if any, appertaining thereto. [PSA § Recital A].

- b. **Private Sale**. As set forth herein in greater detail, the Debtors have marketed the *Atlantic* for nearly one year and submit that the terms memorialized in the PSA constitute the highest and otherwise best offer for the vessel. The Debtors do not believe that further marketing or conducting an auction with respect to the *Atlantic* would procure a higher or better offer. Nevertheless, out of an abundance of caution and as described above, the Debtors will continue to market the *Atlantic* and will entertain any Competing Bids through May 25, 2015 at 5 p.m. Eastern Daylight Time. If the Debtors receive Competing Bids, the Debtors will hold an auction among those submitting Competing Bids on May 26, 2015 at a time and place to be determined.

- c. **Closing Deadline**. Closing will occur on May 29, 2015, or such later date as the parties may mutually agree. [PSA § 3].

- d. **Good Faith Deposit**. A Deposit of $450,000 will be made by the Purchaser into an escrow account by no later than May 7, 2015 and held in accordance with the terms of the Escrow Agreement entered into between Purchaser and CDOCI, dated May 1, 2015 (the "**Escrow Agreement**"). [PSA § 2(a)]. At Closing, the Deposit will be applied to the Purchase Price. If CDOCI fails to deliver the *Atlantic* in accordance with the PSA and the Purchaser cancels the PSA, Escrow Agent, upon written instructions by Purchaser, shall deliver the Deposit or Escrowed Funds, as the case may be, to Purchaser. [Escrow Agreement § 2(b)]. If

---

[4] Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to such terms in the PSA or Escrow Agreement.

         before Closing, the *Atlantic* becomes an actual, constructive or compromised total loss, the Deposit or the Escrowed Funds, as the case may be, shall be released in full to the Purchaser as soon as reasonably practicable. [Escrow Agreement § 2(b)]. If the remainder of the Purchase Price is not deposited with the Escrow Agent in accordance with the Agreement and CDOCI cancels the Agreement, Escrow Agent, upon written instructions by CDOCI, shall deliver the Deposit to CDOCI. [Escrow Agreement § 2(c)].

    e.    **Break-Up Fee.** In the event that the Debtors accept a Competing Bid, the Debtors propose to pay the Purchaser a breakup fee of 2% of the Purchase Price (*i.e.* $90,000). The Debtors do not propose to provide expense reimbursement to the Purchaser.

    f.    **Relationship with the Purchaser**. The Purchaser is not an insider (as defined in Bankruptcy Code section 101(31)) of the Debtors.

    g.    **Relief from Bankruptcy Rule 6004(h)**. The Debtors seek a waiver of the fourteen-day (14) stay imposed by Bankruptcy Rule 6004(h).

## RELIEF REQUESTED

13. By this Motion, the Debtors seek entry of the Sale Order—as proposed in Exhibit A—effective immediately upon entry, authorizing the Sale of the *Atlantic* to the Purchaser pursuant to the PSA free and clear of all liens, claims, encumbrances, and other interests and granting related relief.

## BASIS FOR RELIEF

**I.    The Sale of the Assets is a Sound Exercise of the Debtors' Business Judgment**

14. Bankruptcy Code section 363(b)(1) provides, in pertinent part, that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

15. The decision to sell property of the estate outside the ordinary course of business is entrusted to the sound business judgment of the debtor. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp. (In*

6

*re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that to obtain court approval to sell property under Section 363(b), a debtor must show a "sound business reason" for the proposed action); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (affirming decision permitting debtor to sell assets where sound business reasons supported the sale); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (same).

16. Where the "debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that a debtor acted "in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id*. (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

17. The Debtors' decision to sell the *Atlantic* in accordance with the PSA's terms is based upon an exercise of its sound business judgment. The Debtors believe that the Purchase Price is fair and reasonable and represents the highest and best offer for the *Atlantic* as a result of the Debtors' efforts to market and sell the vessel. Indeed, if the Debtors do not complete the Sale to the Purchaser—who has an immediate need for the *Atlantic*—by the end of May, it is unclear whether the Debtors will be able to realize the same value for this vessel in the future.

18. Moreover, the *Atlantic* has been nonoperational for over a year and the Debtors are not in a position to make the capital expenditure required to bring the vessel to an

operational state.  Accordingly, the Debtors believe that the Sale—which will facilitate a quick and efficient disposition of the *Atlantic* and result in a significant cash infusion—will maximize value for the Debtors' estate.

19. The Debtors further submit that because the *Atlantic* is not core to the Debtors' business, it is not likely to be part of a reorganization or going concern sale in these cases.  Additionally, the Debtors' did not use a broker in connection with the Sale and thus will not be required to pay a commission from the sale proceeds, whereas, in an alternative transaction, a commission would likely need to be paid.[5]

20. Based on the foregoing, the Debtors submit that the Sale to the Purchaser is a sound exercise of the Debtors' business judgment and should be approved in these cases.

## II. A Sale Free and Clear of Liens, Claims and Encumbrances is Appropriate

21. The Debtors further submit that it is appropriate for the *Atlantic* to be sold free and clear of all liens, claims, encumbrances and other interests pursuant to Bankruptcy Code section 363(f).  Pursuant to Bankruptcy Code section 363(f), a debtor may sell property under Bankruptcy Code section 363(b) free and clear of any liens, claims, encumbrances, and other interests of an entity other than the estate if one of the following conditions is satisfied:

> (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or

---

[5] Based on a purchase price of $4,500,000, the Debtors would be required to pay a commission of $175,000 under their brokerage agreement with Derrick.

> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

22. Because section 363(f) is stated in the disjunctive, when selling property of the estate, it is only necessary to meet one of the five conditions listed in that section. *See Folger Adam Sec. Inc. v. De Matteis/MacGregor, JV*, 209 F.3d 252, 257 (3d Cir. 2000) (noting that a debtor is authorized to sell property free and clear of "any interest" if any one of the five prescribed conditions under section 363(f) is met); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.") (citing *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988).

23. The Debtors submit that the Sale will satisfy one or more conditions of Bankruptcy Code section 363(f) for all interests in the *Atlantic*. The Sale will satisfy section 363(f)(2) with respect to security interests of the Debtors' debtor-in-possession financing lenders (who the Debtors anticipate will consent to the Sale), the Debtors' prepetition second-lien lenders (who have consented to the Sale), and any other entity with an interest in the *Atlantic* that expressly consents to the Sale or does not object to this Motion and thus is deemed to consent to the Sale. Alternatively, CDOCI may sell the *Atlantic* free and clear of any other interests under section 363(f)(5) because entities holding such interests could be compelled to accept money satisfaction in legal or equitable proceedings.

24. Accordingly, the Debtors request that the *Atlantic* be sold and transferred to the Purchaser free and clear of all liens, claims, encumbrances, and other interests pursuant to Bankruptcy Code section 363(f).

### III. The Purchaser Should be Entitled to the Protections of Section 363(m)

25. Pursuant to Bankruptcy Code section 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain V. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985).

26. The Debtors request a finding that the Purchaser is a good faith purchaser entitled to the protections of section 363(m). The terms and conditions of the PSA were negotiated by CDOCI and the Purchaser at arm's length and in good faith. The Purchaser was advised by in-house counsel and the Debtors do not believe that the Purchaser engaged in any conduct that would indicate or constitute a lack of good faith. *See In re Gucci*, 126 F.3d 380, 392 (2d Cir. 1997) ("Good faith of a purchaser is shown by the integrity of his conduct during the course of sale proceedings . . . ."); *In re Tempo Tech. Corp.*, 202 B.R. 363, 367 (D. Del. 1996) (stating that a purchaser's good faith status would be destroyed only by conduct involving "'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'") (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). Accordingly, the Debtors believe that the Purchaser is entitled to the protections that Bankruptcy Code section 363(m) provides to good faith purchasers.

### IV. Sale Process Proposed By Debtors is Appropriate

27. Bankruptcy Rule 6004(f)(1) permits private sales or sales conducted without an auction. Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction."). Further, courts have generally held that

a debtor has broad discretion in determining the manner in which assets are sold. *Berg v. Scanlon (In re Alisa P'ship)*, 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of sale is within the discretion of the trustee . . . ."); *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting that a trustee has "'ample discretion to administer the estate, including authority to conduct public or private sales of estate property.'") (citing *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991)).  As long as a debtor maximizes the return to its estate, a court should defer to a debtor's business judgment regarding how to structure an asset sale. *Bakalis*, 220 B.R. at 532 (recognizing that although a trustee's business judgment enjoys great judicial deference, a duty is imposed on the trustee to maximize the value obtained from a sale); *In re NEPSCO, Inc.*, 36 B.R. 25, 26 (Bankr. D. Me. 1983) ("Clearly, the thrust of th[e] statutory scheme [governing 363 sales] is to provide maximum flexibility to the trustee, subject to the oversight of those for whose benefit he acts, *i.e.*, the creditors of the estate.").  Accordingly, if the Debtors conclude that conducting a private sale, as opposed to a public auction, is in the best interests of its estate, the Debtors should be permitted to do so.  *See Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property, "[t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction").

        28.     The Debtors' decision to pursue the Sale without a previously scheduled and advertised auction is supported by the fact that the Debtors have fully explored—over the course of nearly a year—a potential sale of the *Atlantic* with a variety of interested parties. Having obtained what they believe to be the highest and otherwise best bid for the *Atlantic*, the Debtors and their advisors have used their best efforts to negotiate and finalize the PSA.  The

Debtors thus believe that undertaking a public auction for the vessel would be unlikely to produce additional bids for the vessel and would needlessly duplicate their previous efforts.

29. Nonetheless, consistent with the Debtors' fiduciary duties to ensure the greatest return to stakeholders and their estates, the Debtors will entertain any higher and better offers for the *Atlantic* to the extent that a Competing Bid is received prior to the Bid Deadline and meets the following requirements to constitute a Competing Bid: (i) net proceeds to the estate after payment of the Break-Up Fee and payment of any brokerage commission must exceed the Purchase Price by $50,000; (ii) provide for a deposit of $540,000 (*i.e.* match the 10% deposit placed by the Purchaser plus the amount of the Break-Up Fee); and (iii) otherwise conform to the terms of the PSA. If the Debtors receive Competing Bids, the Debtors will hold an auction among those submitting Competing Bids on May 26, 2015 at a time and place to be determined.

30. Any parties interested in acquiring the *Atlantic* should contact, via email, the following parties: (i) the Debtors, Attn: Lisa M. Buchanan, Email: lbuchanan@caldive.com; (ii) the Debtors' Chief Restructuring Officer, Attn: Duff Meyercord, Email: dmeyercord@carlmarks.com; and (iii) the Debtors' counsel, O'Melveny & Myers LLP, Attn: George Davis, Suzzanne Uhland, and Andrew Parlen, Email: gdavis@omm.com, suhland@omm.com, aparlen@omm.com.

## V. The Break Up Fee Should be Approved

31. In the event that the Debtors accept a Competing Bid for the *Atlantic*, the Debtors propose to provide the Purchaser with the Break-Up Fee (*i.e.* 2% of the Purchase Price). The Break-Up Fee is consideration for the Purchaser conducting its due diligence, entering into the PSA, and agreeing to subject its offer to purchase to Competing Bids. The Break-Up Fee was negotiated at arm's-length and in good faith and is necessary to secure the Purchaser's

participation in the Debtors' sale process. Without the Break-Up Fee, the Debtors believe that the Purchaser would not have entered into the PSA.

33. In the Third Circuit, bid protections, including traditional breakup fees, will be approved where they are necessary for the preservation of the debtor's estate. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181F.3d527 (3d Cir. 1999). Accordingly, bid protections may be awarded where they induce a potential purchaser to make an initial bid or adhere to its bid after the court orders an auction and where they promote more competitive bidding. *In re O'Brien*, 181 F.3d at 537.

33. The Court has approved protections similar to the Break-Up Fee requested here as reasonable and consistent with the range of bidding protection typically approved. *See, e.g., In re Coldwater Creek, Inc.*, No. 14-10867 (BLS) (Bankr. D. Del. Apr. 29, 2014) [D.I 266] (approving break-up fee of 1.5% in connection with a $90-100 million sale of assets, a $800,000 reimbursement plus the cost of additional merchandise acquired by the stalking horse for inclusion in the sale); *In re Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 2, 2012) [D.I. 206] (approving break-up fee of 3.0% in connection with a $258 million sale of assets and a $2.5 million expense reimbursement); *In re Solyndra LLC*, No. 11-12799 (MFW) (Bankr. D. Del. Sept. 29, 2012) [D.I. 1113] (approving break-up fee of 2.6% in connection with $90 million sale of assets); *In re Northstar Aerospace (USA) Inc.*, No. 12-11817 (MFW) (Bankr. D. Del. June 27, 2012) [D.I. 119] (approving break-up fee of 3.5% in connection with $70 million sale of assets).

34. Based on the foregoing, the Debtors submit that the Break-Up Fee is reasonable in light of the efforts and expenses that the Purchaser has undertaken in its due diligence review, negotiating the terms of the PSA, and consenting to solicitation of Competing Bids, and should therefore be approved.

RLF1 11943232v.1

## WAIVER OF BANKRUPTCY RULE 6004

35. The Debtors seek to close the Sale as promptly as possible in order to preserve and maximize the recovery thereunder and to minimize any administrative liability with respect to stacking the *Atlantic*. Accordingly, the Debtors request that any order approving the Sale be effective immediately by waiving any stay pursuant to Bankruptcy Rule 6004.

## NOTICE

36. Notice of this Motion shall be provided to (collectively, the "**Notice Parties**"): (i) Office of the United States Trustee for the District of Delaware; (ii) counsel to Bank of America, N.A., as the Pre-Petition Senior Agent under the Pre-Petition Senior Loan Agreement and the DIP Agent under the DIP Facility Agreement (as defined in the DIP Order); (iii) counsel to ABC Funding, LLC, as the Pre-Petition Junior Agent under the Pre-Petition Junior Loan Agreement; (iv) Bank of New York Mellon Trust Company, N.A., as the Indenture Trustee for the Convertible Notes; (v) counsel to the Official Committee of Unsecured Creditors; (vi) the Internal Revenue Service; (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002(i). (viii) all entities known to have expressed an interest in the *Atlantic*; (ix) all parties that, to the Debtors' knowledge, may have a security interest in or lien on the *Atlantic*; and (x) the Purchaser. The Debtors respectfully submit that no other or further notice is necessary.

## NO PRIOR REQUEST

37. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request entry of the Sale Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

May 6, 2015
Wilmington, Delaware

/s/ *Amanda R. Steele*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

**O'MELVENY & MYERS LLP**
George A. Davis (admitted *pro hac vice*)
Peter Friedman (admitted *pro hac vice*)
Andrew M. Parlen* (admitted *pro hac vice*)
Times Square Tower
Seven Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Suzzanne S. Uhland (admitted *pro hac vice*)
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for the
Debtors and Debtors in Possession

*Admitted in CA; Not Admitted to Practice in NY