# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CAL DIVE INTERNATIONAL, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-10458 (CSS)<br><br>Jointly Administered<br><br>Hearing Date: June 22, 2015 at 11:00 a.m. (ET)<br>Obj. Deadline: June 15, 2015 at 4:00 p.m. (ET) |

## MOTION OF CERTAIN MARITIME CLAIMANTS FOR ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF AN OFFICIAL COMMITTEE OF MARITIME LIENHOLDERS PURSUANT TO BANKRUPTCY CODE § 1102(a)(2)

Doerle Food Services, Inc., McDonough Marine Service, and MacTech Offshore, Inc. (collectively, the "Maritime Claimants")—each holding maritime liens under the Federal Maritime Lien Act (codified as 46 U.S.C. §§ 31301-31343) on vessels owned by the above-referenced debtors and debtors-in-possession (the "Debtors")—hereby move this Court (the "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), directing the United States Trustee (the "US Trustee") to appoint an official committee of maritime lien claimants (the "Maritime Lienholders' Committee") in the bankruptcy cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") pursuant to Bankruptcy Code § 1102(a).[1]

### SUMMARY OF RELIEF SOUGHT

1.  As creditors that provided "necessaries"—such as goods and services—to vessels, maritime lien creditors have special and unique rights in vessels and exclusive remedies (such as to arrest vessels) under the Federal Maritime Lien Act that are not available to other creditors.

---

[1] The Maritime Claimants have no intention of forming an *ad hoc* committee at this time.

{1057.001-W0036614.}

As a result, maritime lienholders have interests that significantly diverge from those of general unsecured creditors. The unique nature of the maritime lienholders' claims and the widespread and disparate claim amounts of the individual maritime claimholders has given rise to a constituency that is not adequately represented by the Official Committee of Unsecured Creditors (the "Creditors' Committee") appointed in these cases—even if a member of the Creditors' Committee is a member of that constituency.

2. On April 21, 2015, the Maritime Claimants sent a letter (attached hereto as Exhibit B) to the Office of the United States Trustee (the "US Trustee") requesting the appointment of an official Maritime Lienholders' Committee. On April 22, 2015 (merely one business day later), the US Trustee responded with a letter (attached hereto as Exhibit C) summarily denying the request without explanation and without first soliciting comment from other parties in interest.

3. Accordingly, for the reasons set forth herein, the Maritime Claimants request that this Court direct the US Trustee to appoint an official Maritime Lienholders' Committee.

## BACKGROUND

4. The Federal Maritime Lien Act grants maritime liens to particular persons based on their relationship to, or service of, a vessel.[2] Maritime liens have special features designed to protect persons who own, sail, and service ships from the unique risks associated with the shipping industry.[3] Accordingly, maritime lienholders maintain numerous protections unavailable to ordinary unsecured creditors.

---

[2] *See* 46 U.S.C. §§ 31341-31343.

[3] *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 869 (11th Cir. 2010).

A.  **Maritime Liens Generally**

5.  Maritime liens are a unique security device, serving the dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away. A maritime lien is a special property right in the vessel itself, arising in favor of the creditor by operation of law as security for a debt or claim.[4] When a maritime lien attaches to a vessel, it "accompanies the ship everywhere and through all transfers of ownership, even into the hands of a bona fide purchaser without notice, unless the transferee has acquired title through an in rem judicial proceeding that extinguishes the lien."[5]

6.  In addition, the perfection of a maritime lien does not require that a maritime lienholder record its lien, obtain possession of the vessel, or file a claim against the ship.[6] Rather, the maritime lien attaches and is automatically perfected when the underlying debt or claim arises.[7] Indeed, for these reasons, maritime liens are often characterized as "secret liens" because third parties may have no notice that they exist.[8] Bankruptcy Code § 506(d) does not require marine lienholders to file proofs of secured claim.

7.  Maritime liens are also unique in that they "have priority over non-maritime liens and priority over other maritime liens in reverse chronological order: that is, the most recent lien possesses the superior claim."[9] Maritime lienholders also enjoy exclusive remedies against the vessels to which they have provided goods and services. For example, because the Federal

---

[4] *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986)

[5] *Id.*

[6] *See, e.g., Bermuda Express, N.V. v. M/V Litsa (Ex. Laurie U)*, 872 F.2d 554, 557-58 (3d Cir. 1989).

[7] *Equilease*, 793 F.2d at 603.

[8] *Bermuda Express*, 872 F2d at 557-58.

[9] *Equilease*, 793 F.2d at 602 ("The federal maritime lien is a unique security device, serving the dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away."); *Vandewater v. Mills*, 60 U.S. 82 (U.S. 1857) (describing a maritime lien as a "secret" right of the lienholder in the property even when he is "without actual possession or any right of possession," and acknowledging the lien remains with the vessel, even surviving its purchase by a bona fide buyer).

Maritime Lien act "personifies a vessel as an entity with potential liabilities independent and apart from the personal liability of its owner," maritime lienholders have the right to arrest and seize the vessel and have it sold to satisfy the debt owed without instituting a formal foreclosure proceeding.[10]

    B. <u>Maritime Lienholders Are Not Adequately Represented Here</u>

  8. These superior rights and remedies are available only to maritime lienholders—not other unsecured trade creditors. Maritime lienholders are also likely to be the most numerous creditors in the case. Yet even though ten to thirteen maritime claimants appeared at the organizational meeting, only two were selected to serve on an Unsecured Creditors' Committee dominated by bondholders. Maritime claimants are therefore in a unique position in bankruptcy cases but are not adequately represented by—and are in fact at odds with-general unsecured creditors and the Official Creditors' Committee. This is because, among other reasons, maritime lienholder claims should be paid in full out of ship proceeds before general unsecured creditors receive any distribution of those proceeds and are otherwise entitled to adequate protection of their maritime liens. Indeed, any sale of substantially all of the Debtors' assets (which the Debtors have already proposed) will have to break out the proceeds of vessels from other assets and distribute such proceeds to maritime lienholders, satisfying their claims in full, prior to any distribution of those proceeds to other creditors. For all of these reasons, maritime lienholders require the representation they currently lack.

## RELIEF REQUESTED

  9. The Maritime Lienholders request that this Court direct the US Trustee to appoint an official committee of maritime lienholders holders pursuant to Bankruptcy Code § 1102(a).

---

[10] *Equilease*, 793 F.2d at 602 (citations omitted).

## BASIS FOR RELIEF

10. Bankruptcy Code § 1102(a)(2) and the case law in this district authorize the United States trustee to appoint additional committees of creditors to assure adequate representation.[11] There are a number of factors that are used to analyze the adequacy of representation on an official committee that must be analyzed on a case-by-case basis.[12] Those factors include (i) the nature of the case and the standing and desires of the various constituencies, (ii) the ability of creditors to participate in the bankruptcy cases without an official committee, (iii) the tasks that a committee or separate committees would perform, (iv) whether different classes may be treated differently under a Chapter 11 plan, and (v) the costs incurred by the appointment of additional committees.[13]

11. An analysis of those factors strongly supports the appointment of a separate Maritime Lienholders Committee.

### C. Nature of the Case and Concerns of Maritime Lienholders

12. As an initial matter, the Debtors implicitly recognize that they have considerable exposure to maritime lien claims. Nearly all of the largest trade creditors listed in the Debtors' Chapter 11 petitions appear to be providers of goods and services to the Debtors' vessels. Numerous smaller maritime claimants have a material interest in these cases, but lack the economic clout to assert those interests.

---

[11] Specifically, Bankruptcy Code § 1102(a)(2) provides that "On request of a party in interest, the court may order the appointment of additional committees of creditors . . . if necessary to assure adequate representation of creditors . . . . The United States trustee shall appoint any such committee." *See also In re Etoys, Inc.*, 331 B.R. 176, 186 (Bankr. D. Del. 2005).

[12] *See* 7 COLLIER ON BANKRUPTCY ¶ 1102.02[4][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[13] *See, e.g., In re Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209, 212 (Bankr. S.D.N.Y. 1990) ("chief concern of adequate representation is whether it appears that different classes of debt and equity holders may be treated differently under a plan an need representation through appointment of additional committees"); *In re McLean Indus., Inc.*, 70 B.R. 852, 862 (Bankr. S.D.N.Y. 1987) (emphasizing conflicts with existing committees); *In re Hills*, 137 B.R. 4, 5-6 (Bankr S.D.N.Y. 1992) (stressing the nature of the case and the standing and desires of various constituencies "assume significance").

13. The interim DIP order implicitly recognized the existence of a vast amount of maritime lienholders by conceding at least $18.7 million of maritime lienholder claims while not conceding the validity of any of their liens.[14] But, of the thirty largest creditors filed with the lead Debtor's Chapter 11 petition, only around $9.8 million appear to be maritime lienholders, suggesting that scores of individual maritime lienholders totaling $8.9 million in the aggregate and with claims less than $246,000 are claimants in these cases. Maritime lienholders are likely to be the most numerous creditors in these Chapter 11 cases. Even though the Interim DIP Order implicitly recognizes the existence of the maritime liens, it does not concede the validity of such liens or agree to their payment. This means that the Debtors and/or their lenders will undoubtedly contest the validity of many maritime liens—a common practice in other cases in this district where constituencies of creditors had essentially priority claims.[15]

### D. Critical Vendor Status Irrelevant

14. Even though the Debtors have authority to pay maritime lienholders as critical vendors, the total amount that can be paid to all critical vendors is capped at $8,700,000.[16] That is a mere fraction of maritime lienholder claims at issue in these cases, and the critical vendor motion makes clear that they will pay maritime lienholders as critical vendors only if they agree to waive all maritime liens against the Debtors' vessels and agree to supply the Debtors in the future.[17] Given the nature of maritime liens and their place in the creditor payment waterfall, it

---

[14] *See Interim Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing (B) Grant Senior Liens and Superiority Administrative Expense Status, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* (the "Interim DIP Order") [ECF No. 74] ¶ 14(a), at 28-29.

[15] *See e.g., In re SemCrude, L.P.*, 416 B.R. 399 (Bankr. D. Del. 2009) (resolving Bankruptcy Code § 503(b)(9) claims contested by the debtors pre- and post-petition lenders).

[16] *See Final Order Authorizing The Debtors To Pay Prepetition Claims of Critical Vendors and Granting Related Relief* [ECF No. 228] ¶ 2, at 2.

[17] *See Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to Pay Prepetition Claims of Critical Vendors and Granting Related Relief* [ECF No. 3], at Ex. 1 ¶¶ 3-4.

is unlikely that substantial maritime lienholders would agree to waive all of their maritime liens and supply the Debtors in the future for payment as a critical vendor.

### E. Ability for Individual Maritime Lienholders to Participate

15. Numerous maritime lienholders do not have the resources to protect their interests. Because these lienholders will not receive adequate representation from the Creditors Committee, it is unfair effectively to remove their voice from the discussion. In addition, the Creditors' Committee owes its duty solely to unsecured creditors, irrespective of priority of claims within that group.

16. Individual holders of maritime liens also cannot protect the rights of all maritime lienholders because they owe no fiduciary duty to the entire group. Furthermore, it is likely that maritime lienholders' claims will be challenged on a case-by-case basis. A few well-heeled maritime lienholders who may be able to afford to litigate before this Court are not a substitute for an official committee, as Judge Shannon recognized in appointing a separate committee of crude oil producers in *In re SemCrude L.P.*:[18]

> [T]here are many small players in this group, as well as large players, and I expect that most of the folks we have heard from throughout the last few months in this case represent just larger players. Just by economics, though the players who have the ability to engage counsel and send people out here. But again, the record is undisputed that there are smaller players who have an interest that is not necessarily represented at least at this stage and I find also like to some extent the fact that a number of these producers have actually come together and cooperated by necessity actually points up what I think is a need for more formal structure for those producers operate.[19]

---

[18] *In re SemCrude, L.P.*, Main Case No. 08-11525 (BLS) (Bankr. D. Del.).

[19] *In re SemCrude, L.P.*, Case No. 08-11525, Hr'g Tr.: 184:13-185:4 (Bankr. D. Del. Oct. 3, 2008), attached hereto as Ex. D.

17. Like crude oil producers in the *SemCrude* case, maritime lienholders deserve a seat at the table to ensure their unique interests and rights are protected. An official Maritime Lienholders' Committee should be appointed to advance and to protect the interests of this unique class of creditors.

### F. Tasks a Maritime Lienholders' Committee Would Perform that the Creditors' Committee Cannot

18. As previously noted, maritime lienholders are entitled to assert rights against the Debtors' vessels that, in many instances, place them ahead of even certain secured creditors, whereas unsecured creditors generally are not entitled to liens in the Debtors' vessels and any proceeds thereof. Representing the interests of such claimants is antithetical to the mandate of the Official Unsecured Creditors' Committee.

### G. The Fiduciary Duties of the Creditors' Committee Conflict with the Interests of Maritime Lienholders

19. The unsecured creditors committee cannot—and would likely be prohibited from— adequately represent the interests of maritime lienholders. In connection with fulfilling its fiduciary duties to unsecured creditors generally, that the Creditors' Committee will likely challenge maritime lien claims likely because challenging such liens is a practically a pre-requisite to fulfill the Creditors' Committee's fiduciary duties to its constituents. By contrast, an official Maritime Lienholders' Committee would defend the priority and adequacy of such liens to ensure that the interests of all maritime lienholders are adequately represented.

20. Further, the majority of the five members of the Creditors' Committee consists of entities representing bondholders. These three committee members have no interest in protecting the rights of maritime lienholders, and will all but certainly seek to challenge each maritime lien to ensure a greater recovery for the unsecured creditors generally. Other members of the Creditors' Committee—despite possibly holding maritime liens—have no recourse to protect the

interests of the maritime lienholders. Even if the two trade creditors with maritime liens selected for membership on the Creditors' Committee could parlay the attacks of the bondholders, they would be legally prevented from doing so.

21. Based on other cases in this district where debtors have both general unsecured trade creditors and creditors with special protections (such as statutory/operational liens) under applicable law, bankruptcy courts have appointed a separate official committee to represent the interests of those creditors in the case with unique interests. For example, in *SemCrude*, Judge Shannon recognized that crude oil producers that (like maritime lienholders) had special liens on crude oil sold downstream (the *SemCrude* debtors' principal asset) under applicable state law "have a significant and discrete interest that is not presently adequately represented on the Unsecured Creditors' Committee."[20]

    H.    <u>Marine Lienholders have unique interests in the Debtors' Proposed Section 363 Sales</u>

22. The Debtors have also proposed two § 363 sales in the coming months: one to sell their "non-core" assets—consisting entirely of vessels in which maritime lienholders may have an interest; the other is to sell (if a financial restructuring fails) their "core business"—also consisting of vessels in which maritime lienholders have an interest.[21] It is important that maritime lienholders' interests are protected in these sales and that their maritime liens are not released until paid in full.

23. Moreover, it is doubtful that this Court has jurisdiction to adjudicate maritime lienholders' rights against vessels (whether in a § 363 sale free and clear or a Chapter 11 plan), as claims to enforce liens against vessels can only be brought in a federal district court sitting in

---

[20] *SemCrude* Hr'g Tr., Ex. D, at 183:11-16.

[21] See *Quinn J. Hebert's Declaration in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [ECF No. 15] at ¶ 14, at 5.

admiralty.[22] In light of the Supreme Court's decision in Stern v. Marshall, 564 U.S. 2 (2011), it is unlikely that this Court – even if maritime lienholders file proofs of claim (which many may not) – can adjudicate, on a final order basis, Marine lien claims in these Chapter 11 cases.

     I.    <u>Maritime Lienholders Must Be Classified Separately under Any Chapter 11 Plan</u>

24.    Because of the unique rights of maritime lienholders, any Chapter 11 plan filed in this case will need to classify the claims of maritime lienholders and suppliers separately from general unsecured claims. Indeed, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar the other claims or interest of such class."[23]

25.    The claims of maritime lienholders are not substantially similar to the claims of general unsecured creditors, however, for reasons already noted. Furthermore, Bankruptcy Code § 1123(a)(4) requires that a plan provide the same treatment for each claim of a particular class; but the unique maritime lien rights of maritime lienholders entitle them to different treatment than might be afforded general unsecured creditors.

     J.    <u>Appointment of an Official Committee of Maritime Lienholders Will Conserve Estate Resources</u>

26.    Finally, the appointment of a Maritime Lienholders Committee would also conserve estate expenses, particularly because the maritime lienholders could negotiate with one voice. Absent an official committee, the Debtors will not have a single representative with whom to negotiate regarding a voluminous amount of claims, plan provisions, and claims resolution procedures. An official Maritime Lienholders Committee will alleviate urge of individual

---

[22] *Norton v. Switzer*, 93 U.S. 355, 366 (1876) ("[I]n all cases where a maritime lien arises, the original jurisdiction to enforce the same by a proceeding in rem is exclusive in the district courts sitting in admiralty.") *See, also e.g., Morgan Guar. Trust Co. v. Hellenic L.ines Ltd.*, 38 Bankr. 987 (S.D.N.Y. 1984); *In re Interocean Transp. Co.*, 232 F. 408 (S.D.N.Y. 1916); *The Philomena*, 200 F. 859 (1). Mass. 1911).

[23] 11 U.S.C. § 1122(a).

maritime lienholders to file individual pleadings, which will, in turn, prevent numerous, duplicate filings by maritime lienholders dealing with the same issues.[24]

        K.      The Cost of an Official Martime Lienholders' Committee to the BankruptcyEstates Does Not Outweigh the Adequate Representation Interests of Maritime Claimants

27. Because the fundamental purpose of Bankruptcy Code § 1102(a)(2) is to provide adequate resources and a level playing field for creditors, there will be costs. But such additional cost must be weighed against the need for adequate representation of maritime lienholders generally.[25] At this time, the US Trustee has appointed the Creditors' Committee and no other official committee.

28. The appointment of an official Maritime Lienholders' Committee therefore will neither delay these cases nor impose undue expense on the estates. These cases remain in their preliminary stages, with no indication that a plan of reorganization is forthcoming. The Court's oversight of professional fees also operates as a check against an official maritime lienholders' committee undertaking unreasonable activities, vexatious positions, or fruitless litigation. As one court aptly stated, "[t]he potential added cost is not sufficient in itself to deprive the creditors of the formation of an additional committee if one is otherwise appropriate."[26]

29. A Maritime Lienholders' Committee would focus solely on issues that impact recoveries for maritime claimants. A Maritime Lienholders' Committee should work in tandem with other estate professionals, and existing and investigative materials can and should be shared

---

[24] *SemCrude* Hr'g Tr., Ex. D, at 187:5-13 ("And clearly there is no question or guarantee that the appointment of a producers' committee will limit the amount of litigation in these cases or otherwise curtail the actions of individual producers. But experience suggests that that may occur here and thus holds out the prospect of the debtors and other parties will benefit from having a single voice of negotiate on at least some important issues.").

[25] *See In re Wang Labs., Inc.*, 149 B.R. 1, 4 (Bankr. D. Mass. 1992); *In re Beker Indus. Corp.*, 55 B.R. 945, 949-50 (Bankr. S.D.N.Y. 1985).

[26] *In re Interco, Inc.*, 141 B.R. 422, 424 (Bankr. E.D. Mo. 1992). *See also In re McLean Indus., Inc.*, 70 B.R. 852, 860 (Bankr. S.D.N.Y. 1987) ("Costs alone cannot and should not deprive public debt and security holders of representation"); *Beker*, 55 B.R. at 951 (same).

to avoid unnecessary duplication of effort. Sharing of investigative efforts and work product between the committees, the Debtors, and any examiner or trustee that may be appointed, will ensure that the Maritime Lienholders' Committee does not impose undue cost. The incremental cost of professionals employed by an official Maritime Lienholders' Committee will be modest relative to the costs already being incurred by the existing Creditors' Committee and other estate professionals. Such costs would be negligible compared to the magnitude of losses and potential claims at issue and the overall assets and liabilities involved in these cases.

### L.    Maritime Claimants Need an Official Lienholders' Committee to Participate in These Cases Meaningfully

30.    Official status for Maritime Lienholders' Committee is essential. The Debtors, their pre- and post-petition lenders, and the Creditors' Committee are already (or will shortly be) making decisions charting the course of these cases that may adversely impact maritime claimants and their lien rights. The appointment of an Official Maritime Lienholders' Committee now is paramount, as superior lien rights may be eroded or eviscerated as the Debtors resolve disputes, fix claims, and incur fees and costs borne by the bankruptcy estates. Indeed, the Debtors have already begun divesting various vessels and have requested that this Court authorize such sales free and clear of, *inter alia*, maritime liens.[27]

31.    In sum, maritime lienholders deserve a place at the table in these cases now. This Court should, therefore, order the appointment of an official Maritime Lienholders' Committee to advance and to protect the interests of maritime claimants.

---

[27] *E.g., Debtors' Motion for an Order (I) Authorizing Cal Dive Offshore Contractors, Inc. to Sell the Atlantic and Related Assets Free and Clear of All Liens, Claims and Encumbrances and (II) Granting Related Relief* [ECF No. 337].

## NOTICE

32. Notice of this Motion shall be provided to (i) Office of the United States Trustee for the District of Delaware; (ii) counsel to Bank of America, N.A., as the Pre-Petition Senior Agent under the Pre-Petition Senior Loan Agreement and the DIP Agent under the DIP Facility Agreement (as defined in the DIP Order); (iii) counsel to ABC Funding, LLC, as the Pre-Petition Junior Agent under the Pre-Petition Junior Loan Agreement; (iv) Bank of New York Mellon Trust Company, N.A., as the Indenture Trustee for the Convertible Notes; (v) counsel to the Official Committee of Unsecured Creditors; (vi) the Internal Revenue Service; (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002(i). The Maritime Claimants respectfully submit that no other or further notice is necessary.

## NO PRIOR REQUEST

33. The Lienholders have made no prior request for the relief requested herein to this or any other court.


[Remainder of Page Intentionally Left Blank]

WHEREFORE, the Maritime Claimants respectfully request that this Court enter an order, substantially in the form of the Proposed Order, (i) directing the US Trustee to appoint an official Maritime Lienholders' Committee pursuant to Bankruptcy Code § 1102(a)(2) of the Bankruptcy Code and (ii) granting such other and further relief as this Court deems just and proper under the circumstances.

Dated: May 19, 2015
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____
Matthew B. McGuire (No. 4366)
Travis J. Ferguson (No. 6029)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: mcguire@lrclaw.com
ferguson@lrclaw.com

– and –

**MCKOOL SMITH, P.C.**
Peter S. Goodman *(Admitted Pro Hac Vice)*
Michael R. Carney *(Admitted Pro Hac Vice)*
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
Email: pgoodman@mckoolsmith.com
mcarney@mckoolsmith.com

– and –

**MCKOOL SMITH, P.C.**
Hugh M. Ray, III
Basil A. Umari
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300
Facsimile: (713) 485-7344
Email: hmray@mckoolsmith.com
bumari@mckoolsmith.com

*Counsel for Certain Maritime Claimants*