**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                            :   Chapter 11
                                                  :
                                                  :   Case No. 15-10458 (CSS)
CAL DIVE INTERNATIONAL, INC., et al.,             :   Jointly Administered
                                                  :
                                                  :   Re: D.I. 336
                                                  :
             Debtors.                             :   Hearing Date: May 27, 2015, at 11:00 a.m.
                                                  :   Obj. Deadline: May 20, 2015, at 4:00 p.m.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO**
**DEBTORS' MOTION FOR SUPPLEMENTAL ORDER REGARDING EMPLOYMENT**
**OF CARL MARKS ADVISORY GROUP LLC AS CRISIS MANAGERS**

Andrew R. Vara, Acting United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned counsel, hereby objects to Debtors' Motion for Supplemental Order Regarding Employment of Carl Marks Advisory Group LLC as Crisis Managers (D.I. 336) (the "Motion"), and in support of his objection respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  The Debtors are attempting to have their chief restructuring officer double as their investment banker in these cases. This would violate the order authorizing the CRO's engagement, while permitting the Debtors to retain an interested professional in contravention of Section 327(a). The Motion should be denied.

**JURISDICTION**

2.  Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this objection.

3. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4. The U.S. Trustee has standing to be heard on the Motion pursuant to 11 U.S.C. § 307.

## BACKGROUND

5. On March 3, 2015, the above-captioned debtors (the "Debtors") filed chapter 11 petitions in this Court.

6. On March 13, 2015, the Debtors filed a motion (the "Original Motion") to engage Carl Marks Advisory Group LLC ("CMAG") to provide F. Duffield Meyercord as the Debtors' chief restructuring officer. D.I. 105.

7. The engagement agreement filed as part of the Original Motion provides in part:

> Mr. Meyercord will assist the Company and its management team in connection with its chapter 11 proceeding, including planning, managing and implementing the sale of certain assets . . . and evaluating a prospective sale or merger of the Company and/or any portion thereof through a court-approved sale transaction under Section 363 of the Bankruptcy Code, through a plan of reorganization, or similar mechanism (the "Transaction"). CMAG will support Mr. Meyercord in those efforts. In that connection, Mr. Meyercord, with support from CMAG, will perform the following representative tasks as necessary and directed:
>
> [ . . . ]
>
> - Manage the process for the Company's engagement of brokers, investment bankers and other professionals in connection with the asset sales;

2

[ . . . ]

- Provide administrative support, including:
  ⇒ Support sale processes with the Company's investment banker including due diligence requirements, management meetings, interviews, support preparation of asset purchase agreement schedules, and assist the Company with meeting any closing conditions[.]

8. On March 25, 2015, counsel for the U.S. Trustee raised questions and comments about the Original Motion with Debtors' counsel. The questions and comments were resolved through a revised form of order, which was submitted under certification of counsel on April 1. *See* D.I. 187. The Court entered the revised order on April 6, 2015. *See* D.I. 214.

9. Through the Motion, the Debtors seek to engage Charles Boguslaski of CMAG to "be responsible for planning, managing, and implementing the sale of the Debtors' assets through a sale transaction under section 363 or a plan of reorganization." *Id.* ¶ 11.

10. Mr. Boguslaski and his team would receive $150,000 per month in compensation—a 48 percent increase over CMAG's compensation as chief restructuring officer.

## ARGUMENT

### A. CMAG *qua* Investment Banker Is Professional Ineligible for Retention Under 11 U.S.C. § 327(a)

11. Section 327(a) of the Bankruptcy Code authorizes the retention of professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons[.]"

12. Section 101(14) defines "disinterested person" to mean a person that—

3

>   (A)   is not a creditor, an equity security holder, or an insider;
>
>   (B)   is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
>   (C)   does not have an interest materially adverse to the interest of the estate . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason[.]

13.   A chapter 11 debtor cannot employ professionals who are not disinterested. *See*, *e.g.*, *United States Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3d Cir. 1994) ("[T]he power of a debtor in possession to employ accountants or other professionals . . . is specified by Section 327(a) . . . . [T]he debtors in this case could not employ accountants or other professional who were not 'disinterested.'").

14.   Basic principles of statutory construction dictate that the Bankruptcy Code be interpreted as a whole. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 559 (3d Cir. 2003). Accordingly, to the extent that the Bankruptcy Code provides authority for a debtor in possession to employ "professional persons" under one section of the Code—Section 327(a)—subject to certain qualifying requirements, the debtor in possession and the professional at issue should not be permitted to evade or ignore those requirements by shopping for a less-specific Code section that does not contain the same requirements. *See F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 108-09 (3d Cir. 1988) (refusing to permit professional that was unable to meet requirements for employment under Section 327(a) to seek compensation under Section 503(b)(1)(A)).

15. The Motion should be denied because CMAG is a professional person whose retention is subject Section 327(a), and, due to CMAG's interested status, the firm cannot satisfy the requirements for employment under that statute.

16. CMAG is a professional person whose employment must be approved under Section 327(a). *See In re First Merchants Acceptance Corp.*, 1997 WL 873551 at *2, 3 (D. Del. Dec. 15, 1997) (Farnan, C.J.) (describing "quantitative" and "qualitative" tests for evaluating whether an entity is a "professional" under 11 U.S.C. § 327(a). Relevant factors include whether (1) the person manages or sells assets that are significant to the debtor's reorganization; (2) the person is involved in negotiating the terms of a plan; (3) the employment is directly related to the routine maintenance of the debtor's business operations; (4) the person has autonomy to exercise independent professional judgment; (5) the extent of the person's involvement in the administration of the estate; and (6) the person's services involve special skill or knowledge). Whereas CMAG's original engagement contemplated that CMAG would oversee the Debtors' retention of an investment banker and then provide administrative support to that investment banker during a sale process, the Motion seeks rather to install CMAG to perform those investment banking services in lieu of a separate firm. According to CMAG's website,[1] Mr. Boguslaski, the individual CMAG would provide to render the investment banking services,

> has more than 15 years of investment banking and financial restructuring experience. He has been recognized by various industry authorities for his execution of complex, creative solutions for his clients.
>
> Mr. Boguslaski has represented both public and private companies, boards of directors, creditor groups, and investors on mergers and acquisitions, capital raises, and financial restructuring engagements, including Section

---

[1] *See* http://carlmarks.com/team/charles-boguslaski/ An image of the webpage is attached to this objection as Exhibit A.

5

363 Sales and internal reorganizations. He also has provided valuations, fairness opinions, and testified as an expert witness in bankruptcy court.

Instead of "assist[ing]" the Debtors with selling "certain" assets, and providing administrative support to an investment banker through the sales process, as originally contemplated, CMAG would now be providing those investment banking services itself. Insofar as CMAG would be providing such services, it would be a professional whose retention can be authorized only under Section 327(a).

17. CMAG cannot be retained under Section 327(a) because CMAG cannot meet the statute's disinterestedness requirement. As chief restructuring officer, Mr. Meyercord is an "officer." As an officer, he is also an insider. *See* 11 U.S.C. § 101(31)(B)(ii). His status as an officer and insider (and, by extension, his lack of disinterestedness) is properly imputed to CMAG because his employment as chief restructuring officer is an integral part of CMAG's engagement. *See In re Essential Therapeutics, Inc.*, 295 B.R. 203, 208-11 (Bankr. D. Del. 2003) (Walrath, C.J.) (partner's status as "officer" properly imputed to firm). Mr. Meyercord is CMAG's representative – thus, CMAG, by providing its services, is serving as an "officer" of the Debtors post-petition.

18. CMAG's role as an officer and insider of the Debtors in these cases renders CMAG not disinterested pursuant to Section 101(14)(A) and (B) and therefore ineligible to be retained under Section 327(a). If the Debtors wish to retain an investment banking professional, then they must file a motion under Section 327(a)—rather than seek to have one of their officers serve as that professional. The Bankruptcy Code plainly precludes this.

19. The Motion concedes that the Debtors had retained an investment banker pre-petition to pursue strategic transactions but are not seeking to retain that firm or any other

investment-banking firm post-petition "because they believe that CMAG, with an enhanced team, can build seamlessly on the substantial work performed by the Debtors' advisors and management prepetition while saving the estates the expense of employing another professional." Motion ¶ 10.  The Motion also asserts that denying the Motion would "deprive"[2] the Debtors of personnel needed to run an effective sale process, and that hiring "new professionals" to manage the sale process would require the Debtors to spend time and resources they do not have.  *See id.* ¶ 18.

20. The Third Circuit has rejected this way of evaluating the engagement of professionals.  In *United States Trustee v. Price Waterhouse*, the debtors sought to retain Price Waterhouse as their accountant and financial advisor, despite that the firm held a claim for services rendered pre-petition.  The U.S. Trustee raised a disinterestedness objection, which the Bankruptcy Court overruled:

> While some courts do not interpret § 327(a) literally, we believe that a more practical view is required which considers the economic realities of the case and the overriding purposes of Chapter 11 of the Bankruptcy Code.
>
> [ . . . ]
>
> Even if the Debtor had the capability of engaging an accounting firm to replace Price Waterhouse, it would be extraordinarily expensive and take a substantial length of time to become familiar with the Debtor's needs.
>
> The Debtor has no cash to pay a retainer to a new firm and it is unlikely that a new firm could be engaged without a retainer given the serious possibility that this estate will have no funds with which to pay administrative expenses.  Further, the Debtor is under tight time constraints to complete its work and present it to the Court.

---

[2] The Motion offers no reason why the Debtors' pre-petition investment banker—whose work CMAG could apparently build upon—could not serve in that role post-petition.

7

> The economic realities of this case make Price Waterhouse's appointment imperative. No harm to any other party has been alleged or can be shown.

*In re Sharon Steel Corp.*, 152 B.R. 447, 449-50 (Bankr. W.D. Pa. 1993), *aff'd*, 154 B.R. 53 (W.D. Pa. 1993).

21. The Third Circuit rejected this analysis and reversed. *See United States Trustee v. Price Waterhouse*, 19 F.3d 138, 142 (3d Cir. 1994). "If it is thought that Section 327(a) should allow trustees and debtors in possession under some circumstances to employ professionals who are not 'disinterested,' an amendment of that provision should be sought from Congress." *Id.* As in *Price Waterhouse*, the practicalities and economic realities of these cases have no bearing on the Section 327(a) analysis.

**B. Requested Relief Would Violate CRO Order to which CMAG Agreed**

22. The relief sought in the Motion would violate the order authorizing CMAG to provide a chief restructuring officer in these cases. That order provides in part that "CMAG and its affiliates will not act in any other capacity (for example, and without limitation, as financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned cases." D.I. 214 ¶ 2(a). Investment banker is precisely the type of "other capacity" in which CMAG has agreed not to serve in these cases. CMAG agreed to the order and should abide by it.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the Motion and grant such other relief as the Court deems appropriate and just.

Dated: May 20, 2015
Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**

By: */s/ Benjamin Hackman*
Benjamin A. Hackman
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (fax)

## **Exhibit A**

**Boguslaski Biography**



# CHARLES BOGUSLASKI
Managing Director, Carl Marks Advisors



**CONTACT**
212-909-8400
cboguslaski@carlmarks.com
vCard

---

**EDUCATION**
Yale University (MBA)

Boston College (BS)

Charles Boguslaski has more than 15 years of investment banking and financial restructuring experience. He has been recognized by various industry authorities for his execution of complex, creative solutions for his clients.

Mr. Boguslaski has represented both public and private companies, boards of directors, creditor groups, and investors on mergers and acquisitions, capital raises, and financial restructuring engagements, including Section 363 Sales and internal reorganizations. He also has provided valuations, fairness opinions, and testified as an expert witness in bankruptcy court. These assignments span a number of industries, including consumer products, business services, transportation, healthcare, hospitality, retail, professional services, manufacturing, telecommunications, and automotive. His representative engagements include Monitor Co. Group, Exide Technologies, DirectBuy Holdings, Enron Corp., Linens 'n Things, Chicago Sun-Times, United Airlines Corp., and American Airlines.

Prior to joining Carl Marks, Mr. Boguslaski worked for Gordian Group, LLC, a middle-market investment banking firm focused on financial restructurings and distressed M&A transactions. Previously, he served in the corporate development group for Bayer Biological Products as it was sold to Cerberus. He began his career at LECG, a premier micro-economic consulting firm, where he advised on a variety of engagements, including mergers, financial valuations and business analyses, bankruptcies, financial damages, and labor disputes.

Mr. Boguslaski graduated magna cum laude from Boston College with a BS in Finance and Economics and received an MBA with a concentration in Finance from the Yale School of Management. He is a board member of Serim Research, a dry reagent technology diagnostic company. He is registered with FINRA as a General Securities Representative.

© 2014 Carl Marks & Co. Inc. All rights reserved.
CARL MARKS® and CARL MARKS—CREATING VALUE ® are registered trademarks of Carl Marks & Co. Inc.