IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CAL DIVE INTERNATIONAL, | ) | |
| INC., et al. | ) | Case No. 15-10458 (CSS) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Re: Docket No.: 617 |
| | ) | |

**<u>MEMORANDUM ORDER</u>**

Upon consideration of the *First Interim Application of Akin Gump Strauss Hauer & Feld LLP as Co-Counsel to the Official Committee of Unsecured Creditors for Allowance of Compensation and Reimbursement of Expenses Incurred for the Period from March 17, 2015 Through and Including May 31, 2015* (D.I. 617) (the "Akin Gump First Interim Fee Application" filed by "Akin Gump") and the objection filed thereto by the Bank of America, N.A., as agent for the lenders under the DIP Facility Agreement (D.I. 725) (the "DIP Agent");[1] and the Court having heard oral argument on the Akin Gump First Interim Fee Application on August 20, 2015 (the "Hearing"); and the Court having taken this matter under advisement; the Court hereby FINDS and ORDERS:

1.    The Akin Gump First Interim Fee Application seeks fees in the amount of $973,628.00 and expenses in the amount of $20,206.64.

2.    Prior to the Hearing on the Akin Gump First Interim Fee Application, and as a result of conversations with the Office of the United States Trustee and from the fee

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Akin Gump First Fee Application and/or the First Day Declaration (as defined *infra*).

examiner appointed in these cases, Akin Gump agreed to modify the Akin Gump First Interim Fee Application to request approval of $880,210 in fees and $11,025.36 in expenses; reflecting a total reduction of $102,599.28.[2] Generally, this reduction can be attributed to three categories: (i) approximately $55,000 in fees related to the Official Committee of Unsecured Creditors' (the "Committee") objection to the debtor-in-possession financing, which settled on the eve of trial; (ii) approximately $23,000 in fees related to Akin Gump's retention and conflict review associated therewith; and (iii) approximately $20,000 related to miscellaneous items, including expense issues, overstaffing, etc.

3.      The DIP Agent objects to the Akin Gump First Interim Fee Application arguing that the Debtors' businesses were suffering extreme erosion prior to the Petition Date and that prompt sales were the only likely path open to the Debtors, that such sales would likely result in substantial deficiencies, and that professionals would have to work efficiently and leanly to maximize the value of the estates. The DIP Agent argues that prior to the Petition Date Akin Gump represented the Ad Hoc Committee of Convertible Noteholders and *knew* the economic reality of the Debtors' cases. The DIP Agent objects to Akin Gump First Fee Application on the following grounds: (i) excessive staffing and duplicative efforts and seeks a reduction of $217,087.67; (ii) spending in excess of $275,000 in fees objecting to the DIP motion when there was no alternative to the DIP loan and the DIP loan was necessary to the Debtors' cases, and seeks a reduction of $138,517.83; and

---

[2] *See* D.I. 742.

(iii) billing in excessive amounts on employment and fee applications and seeks a reduction of $41,510. In total, the DIP Agent seeks a reduction of $397,115.33.[3]

    4.    Akin Gump responds that their fees were appropriate. More specifically, Akin Gump responds as follows:

    a.    In response to the fees related to the DIP financing, Akin Gump argues that as a result of their efforts the DIP lender agreed to (i) extend the Committee's investigation period, (b) increase the budget for the Committee's lien investigation, (c) refrain from exercising any remedies with respect to certain litigation by the Debtors against BP arising out of the Macondo spill upon the occurrence of an event of default until after certain specified dates, and (d) modify certain other provisions of the DIP Financing for the benefit of the Debtors' estates and unsecured creditors. Akin Gump also states that the DIP lenders could have settled prior to the lead-up to a contested hearing, but chose not to settle until the day of the hearing on the DIP loan.

    b.    Akin Gump also asserts that the Debtors' value was unclear in the early stages of these cases. More specifically, Akin Gump asserts that the Debtors operated in a volatile industry and the value of their assets is dependent on a volatile commodity. Akin Gump asserts that it was unclear whether there would be a rebound in oil and gas prices that would increase demand for the Debtors' services. Furthermore, at the early stages of these cases, Akin Gump asserts that there were discussions

---

[3] At this time the Debtors have not articulated a position on these issues; however, the Debtors filed a Reservation of Rights related to the Akin Gump First Fee Application. D.I. 732.

regarding the potential conversion of the Debtors' convertible notes to equity; thus creating a substantial return to general unsecured creditors.

    c.    As to the objection as it relates to staffing, Akin Gump asserts that the Committee was facing issues relating to (i) DIP financing, (ii) the sale of the Debtors' assets, (iii) general corporate diligence, (iv) the Committee's application to retain Akin Gump, (v) the relief requested by the Debtors' first and second day motions, and (vi) general administrative and Committee governance matters. Akin Gump asserts that it performed work efficiently and without duplication of services.

    d.    As the objection related to Akin Gump's retention application, Akin Gump asserts that the entries relating to "conflicts checking" relate to reviewing and processing information in connection with the preparation of the disclosure schedules that were included in the Committee's application to retain Akin Gump, and not to time spent on actual conflict check process.

    5.    The Bankruptcy Code authorizes the bankruptcy court to award to a professional "reasonable compensation for actual, necessary services."[4] In determining the award of compensation, the court considers the nature, the extent, and the value of the professional's services, taking into account factors such as "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case . . . [and] whether the services were performed

---

[4] 11 U.S.C. § 330(a)(1).

within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed . . . ."[5]

6.     The bankruptcy court cannot allow compensation for services that were not reasonably likely to benefit the estate or were not necessary to the administration of the estate.[6] The bankruptcy court has a duty to review fee applications notwithstanding the absence of objections by the trustee, debtor or creditors.[7] In the case *sub judice*, Akin Gump bears the burden of proving that the fees and expenses sought and reasonable and necessary.[8]

7.     "Professionals have an obligation to exercise billing judgment."[9] In *In re Kitchen Factors, Inc.*, the Bankruptcy Appellate Panel of the Ninth Circuit (the "BAP") held that an attorney must scale back its services based on the reasonable expected recovery for the estate, not the potential optimum recovery.[10] The *Kitchen Factors* BAP held that a court may abandon the lodestar approach in determining reasonable fees where the "time spent by counsel is not helpful because it is grossly disproportionate to the amounts at stake."[11]

---

[5] 11 U.S.C. § 330(a)(3).

[6] 11 U.S.C. § 330(a)(4)(A)(ii).

[7] *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 841 (3d Cir. 1994).

[8] *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 260 (3d Cir. 1995) (citation omitted).

[9] *Lobel & Opera v. U.S. Trustee (In re Auto Parts Club, Inc.)*, 211 B.R. 29, 33 (B.A.P. 9th Cir. 1997) (citation omitted).

[10] *Digesti & Peck v. Kitchen Factors, Inc. (In re Kitchen Factors, Inc.)*, 143 B.R. 560, 562 (B.A.P. 9th Cir. 1992).

[11] *Id.* at 562.

8.    In *In re Channel Master Holdings, Inc.*, Judge Walrath reduced the fees charged by the committee's financial advisor because (i) the financial advisor used predominately senior personnel; and (ii) since the cases' inception the parties contemplated a liquidation of the debtors' business, as such the financial advisors' time was excessive and did not appear to have rendered a benefit to the debtors' estates or creditors.[12]

9.    As of the Petition Date, in the case *sub judice*, the Debtors intended to sell certain underutilized vessels (referred to as the "Non-Core Assets") under section 363 of the Bankruptcy Code, but the Debtors also aimed to maintain their remaining subsea contracting business (referred to as the "Core Business") as a going concern, either through a sale to a third party or a reorganization of the Debtors' capital structure.[13]  As such, it was unclear as of the Petition Date where these cases were headed, unlike the situation faced by Judge Walrath in *Channel Master Holdings*.

10.    Although at first blush, the Court is concerned about the volume of fees incurred by Akin Gump in the first interim period, as compared with the other professionals, Akin Gump's fees do not appear vastly disproportionate.  The fees billed to the Debtors by counsel in the first interim period is illustrated in the below chart:

---

[12] *In re Channel Master Holdings, Inc.*, 309 B.R. 855, 864 (Bankr. D. Del. 2004).

[13] *See* Quinn J. Hebert's Declaration in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings at ¶ 14 (the "First Day Declaration").  D.I. 15.

| Firm | Firm's Role in Cases | Fees Approved for First Interim Period[14] |
|---|---|---|
| Richards Layton & Finger, P.A. | Co-Counsel for the Debtors | $298,117.50 |
| O'Melveny & Myers LLP | Co-Counsel for the Debtors | $1,556,630.50 |
| Jones Walker LLP | Corporate Counsel for the Debtors | $130,401.75 |
| Pepper Hamilton LLP | Co-Counsel for the Committee | $59,771.00 |
| Akin Gump | Co-Counsel for the Committee | $880,210.00[15] |
| Total Fees for Counsel: | | **$2,925,130.75** |

Based on the above chart, Akin Gump billed approximately 30% of the counsel fees incurred in the first interim period. Furthermore, as disclosed in the First Day Declaration, these cases did not appear as dire as that in *Channel Master Holdings*.

11. Additionally, as the facts and circumstances of these cases have changed, Akin Gump has significantly curtailed its fees incurred in these matters.[16]

12. Thus, at this time and subject to Akin Gump's final fee application, the Court hereby ALLOWS the Akin Gump First Interim Application in the amount of $880,210.00 for fees rendered and $11,025.36 for reimbursement of expenses.

Christopher S. Sontchi, Judge
United States Bankruptcy Court

Dated: December 28, 2015

---

[14] *See First Omnibus Order Awarding Interim Allowance of Compensation for Services Rendered and For Reimbursement of Expenses*, Exh. A.  D.I. 764.

[15] As reduced by agreement.  *See* D.I. 742.

[16] *See* Akin Gump fee applications for June 2015 seeking $107,457.00 in fees and $5,385.69 for reimbursement of expenses; July 2015 seeking $81,364.00 for fees and $2,269.77 for reimbursement of expenses; and August 2015 seeking $46,447.50 in fees and $1,136.06 for reimbursement of expenses.  D.I. 642, 794 and 878.